Hipólita Rivera Durán y otros, demandantes y recurridos, *v.* Banco Popular de Puerto Rico, demandado y peticionario.

Número: CC-2000-104          Resuelto: 2 de octubre de 2000

*Anabelle Rodríguez, Juan A. Frau Escudero* y *José G. Díaz Tejera*, de *Martínez Odell & Calabria*, abogados de la parte peticionaria; *Aníbal Lugo* y *Oliveliza Lugo*, del *Bufete Lugo Irizarry*, y *Pablo Fuentes Torres*, abogados de la parte recurrida.

El Juez Asociado Señor Rebollo López emitió la opinión del Tribunal.

El Sr. José A. Medina Hernández falleció el 23 de febrero de 1989, dejando entre sus bienes una cuenta de cheques y ahorros en el Banco Popular de Puerto Rico (en adelante B.P.P.R.). Esta cuenta fue abierta el 25 de septiembre de 1987, siendo el señor Medina Hernández la única persona autorizada a realizar transacciones en la misma.

El 11 de julio de 1994, la Sra. Hipólita Rivera Durán, heredera del referido causante, presentó demanda contra el B.P.P.R. por alegadamente haber incumplido dicha institución bancaria el contrato de depósito que tenía con el

causante; a esos efectos alegó que dicha institución había actuado de forma negligente al permitir que una persona no autorizada retirara fondos y girara cheques contra la citada cuenta, por lo que reclamó las cantidades de treinta y ocho mil quinientos dólares ($38,500) y setenta y siete mil dólares ($77,000) por concepto de retiros pagados ilegalmente y de beneficios de póliza de seguro dejados de pagar por el B.P.P.R., respectivamente. Además, solicitó la señora Rivera Durán la suma de veinticinco mil dólares ($25,000) por los daños emocionales sufridos como resultado de la actuación negligente de la institución bancaria demandada.

El 3 de octubre de 1994, el B.P.P.R. contestó la demanda levantando varias defensas afirmativas. Posteriormente, el 30 de junio de 1995, la institución bancaria radicó demanda contra tercero contra Mario Gutiérrez y su esposa Luz Nereida Rivera Durán —hermana de la demandante y sobrina del causante— alegando que el señor Gutiérrez falsificó, maliciosa y fraudulentamente, la firma del causante en cheques, hojas de retiro de fondos y en una carta enviada al B.P.P.R. notificando un cambio de dirección. Solicitó el B.P.P.R., del tribunal, que dictara sentencia ordenando a los terceros demandados a satisfacerle cualquier suma de dinero que tuviese que pagar como resultado de la demanda, o, en la alternativa, ordenándoles pagar directamente a la demandante el monto que el tribunal determine en el pleito.

El 16 de agosto de 1999, la demanda radicada fue enmendada para incluir como codemandantes a Carlos L., Margarita, Eduardo J. y Polianna, todos ellos de apellidos Camacho Rivera.[1] El B.P.P.R. contestó la demanda enmendada el 22 de septiembre de 1999, reconvencionando éste contra los nuevos codemandantes. Expuso el B.P.P.R., en su reconvención, que éstos cobraron indebidamente la

---

[1] Los codemandantes incluidos en la demanda enmendada son hijos y herederos del Sr. Carlos Camacho Cruz, quien a su vez era heredero del causante.

suma de dos mil cuatrocientos ochenta y ocho dólares con cuarenta y ocho centavos ($2,488.48) por concepto de seguro de cuenta, ya que el causante no cualificaba para la póliza de seguro de acuerdo con los términos del convenio de cuenta. En esa misma fecha, solicitó el B.P.P.R., del tribunal de instancia, que emitiera una orden dirigida a las instituciones hospitalarias pertinentes para que fueran liberados y le fueran entregados los récords médicos del causante.(²) En una segunda moción, el B.P.P.R. informó al tribunal sobre la posibilidad de que la tercera demandada, Luz Nereida Rivera Durán, estuviese incapacitada para enfrentar el proceso judicial, por lo que recomendó que, en caso de una determinación de incapacidad, se le nombrara un defensor judicial.(³)

El 25 de enero de 2000, el B.P.P.R. presentó una moción solicitando la suspensión de la vista en su fondo por no haberse expresado el tribunal en torno a las mociones presentadas.(⁴) Ese mismo día, el Tribunal de Primera Instancia, Sala Superior de Mayagüez, declaró con lugar la solicitud del B.P.P.R. y le ordenó a varias instituciones que liberaran y entregaran todos los récords médicos del causante. Respecto a la moción en la que se informó sobre la posible incapacidad de la tercera demandada, el tribunal la declaró no ha lugar por entender que la misma no procedía automáticamente por una simple expresión o preocupación de un abogado, y, además, por ésta estar debidamente representada por abogado. El B.P.P.R. tuvo

---

(²) El Banco Popular de Puerto Rico (en adelante B.P.P.R.) sostuvo que esta información era necesaria para sustentar los hechos alegados en la reconvención.

(³) El 22 de noviembre de 1999, el B.P.P.R. presentó una moción reiterando su interés en que el tribunal evaluara la capacidad de la tercera demandada, Luz N. Rivera Durán. De igual forma, el 21 de diciembre de 1999 sometió una moción reafirmando su solicitud para que se emitiera una orden relacionada con los récords médicos del causante.

(⁴) La vista estaba señalada para el 9 de febrero de 2000.

conocimiento de ambas resoluciones el 31 de enero de 2000.[5]

El 1ro de febrero de 2000, el B.P.P.R. sometió una moción en solicitud de que se suspendiera la vista en su fondo por carecer de tiempo suficiente para diligenciar la orden sobre récords médicos y examinar la información solicitada. Sostuvo que esta información es indispensable para preparar sus defensas y alegaciones. Ante la negativa del tribunal de instancia a posponer la celebración de la vista, el B.P.P.R. presentó un recurso de *certiorari* ante el Tribunal de Circuito de Apelaciones, el cual fue *denegado* mediante resolución emitida el 7 de febrero de 2000. En esa misma fecha, recurrió ante este Tribunal imputándole al foro apelativo intermedio haber errado:

> ... al declarar no ha lugar el auto solicitado, en efecto confirmando al Tribunal de Primera Instancia, y permitiendo así la celebración del juicio en su fondo no obstante el caso no estar maduro al haberse expedido las órdenes para obtener los récords médicos, los que contienen evidencia fundamental para la adjudicación del caso en sus méritos, a escasamente cinco (5) días de la vista en su fondo.
>
> ... al declarar no ha lugar el recurso solicitado permitiendo así la vista en su fondo no obstante el Tribunal de Primera Instancia haber errado al no haber adjudicado sobre la posible incapacidad de la tercera demandada. Petición de *certiorari*, pág. 5.

## I

Las Reglas de Procedimiento Civil establecen varios mecanismos para permitir a las partes "descubrir, obtener o perpetuar la prueba necesaria para sustanciar sus alegaciones en el acto del juicio". R. Hernández Colón, *Derecho Procesal Civil*, San Juan, Ed. Michie de P.R., 1997,

---

[5] La resolución sobre incapacidad fue notificada el 31 de enero de 2000. En esa misma fecha, el B.P.P.R. tuvo conocimiento sobre la orden emitida por el tribunal a pesar de no haber sido notificada.

Sec. 2801, pág. 220. Estos mecanismos están basados en el principio básico de que, antes del juicio, las partes tienen derecho a descubrir toda la información relacionada con su caso, independientemente de quién la posea. J.A. Cuevas Segarra, *Práctica Procesal Puertorriqueña: Procedimiento Civil*, San Juan, Pubs. J.T.S., 1985, Vol. II, pág. 123; 8 *Wright, Miller & Marcus, Federal Practice and Procedure: Civil 2d* Sec. 2001, pág. 41 (1994).

Las normas de descubrimiento de prueba persiguen los siguientes propósitos: (1) precisar los asuntos en controversia; (2) obtener evidencia para ser utilizada en el juicio, evitando así sorpresas en esta etapa de los procedimientos; (3) facilitar la búsqueda de la verdad, y (4) perpetuar evidencia. *Wright, Miller & Marcus*, ante; Hernández Colón, *op. cit.* En esencia, su finalidad es permitir que las partes puedan prepararse para el juicio, de forma tal que tengan la oportunidad de obtener la evidencia necesaria para evaluar y resolver las controversias del caso. 6 *Moore's Federal Practice: 3d* Sec. 26.02, pág. 26–26.3 (1997).

Respecto al alcance del descubrimiento, este Tribunal ha adoptado la política de que dicho procedimiento debe ser amplio y liberal. *Aponte v. Sears Roebuck de P.R., Inc.*, 129 D.P.R. 1042, 1049 (1992); *Lluch v. España Service Sta.*, 117 D.P.R. 729, 743 (1986); *Ades v. Zalman*, 115 D.P.R. 514, 518 (1984); *Rivera Alejandro v. Algarín*, 112 D.P.R. 830, 834 (1982); *García Negrón v. Tribunal Superior*, 104 D.P.R. 727, 738 (1976); *Wright, Miller & Marcus*, ante, Sec. 2007, pág. 94. Esta política tiene el efecto de facilitar "la tramitación de los pleitos y evita[r] los inconvenientes, sorpresas e injusticias que surgen cuando las partes ignoran hasta el día de la vista las cuestiones y los hechos que en realidad son objeto del litigio". *Sierra v. Tribunal Superior*, 81 D.P.R. 554, 560 (1959). Además, permite a las partes precisar con exactitud los hechos en controversia, pues en nuestro sistema procesal el propósito de

la demanda es notificar a grandes rasgos cuáles son las reclamaciones y defensas de las partes. Íd.

En este sentido, nuestro ordenamiento solamente establece dos limitaciones: que la información objeto del descubrimiento no sea privilegiada y que la misma sea pertinente a la controversia. *Medina v. M.S. & D. Química P.R., Inc.*, 135 D.P.R. 716, 730–731 (1994); *Ortiz Rivera v. E.L.A., National Ins. Co.*, 125 D.P.R. 65, 70 (1989); *General Electric v. Concessionaires, Inc.*, 118 D.P.R. 32, 38–39 (1986). Estas limitaciones surgen de la Regla 23.1 de Procedimiento Civil, 32 L.P.R.A. Ap. III, la cual dispone:

> El alcance del descubrimiento de prueba, a menos que sea limitado de algún modo por el tribunal, de conformidad con las disposiciones de estas reglas, será como sigue:
>
> (a) En general. —*Las partes podrán hacer descubrimiento sobre cualquier materia, no privilegiada, que sea pertinente al asunto en controversia en el pleito pendiente*, ya se refiera a la reclamación o defensa de cualquier otra parte, incluyendo la existencia, descripción, naturaleza, custodia, condición y localización de cualesquiera libros, documentos u otros objetos tangibles y la identidad y dirección de personas que conozcan hechos pertinentes. No constituirá objeción en que la información solicitada sea inadmisible en el juicio, siempre que exista una probabilidad razonable de que dicha información conduzca al descubrimiento de evidencia admisible. (Énfasis en el original suprimido y énfasis suplido.)

Para estos efectos, y según se desprende de la propia Regla, el concepto de "pertinencia" es más amplio que el utilizado en la resolución de problemas evidenciarios. Véase *General Electric v. Concessionaires, Inc.*, ante, pág. 40.

El esquema adoptado por nuestras reglas deja en manos de los abogados el trámite del descubrimiento, para así fomentar una mayor flexibilidad y minimizar la intervención de los tribunales en esta etapa procesal. *Aponte v. Sears Roebuck de P.R., Inc.*, ante; *Lluch v. España Service Sta.*, ante. No obstante, los tribunales de

instancia tienen amplia discreción para regular el ámbito del descubrimiento, pues es su obligación garantizar una solución justa, rápida y económica del caso, sin ventajas para ninguna de las partes. *Martínez Rivera v. Tribunal Superior*, 85 D.P.R. 1, 13 (1962). Véanse, también: *Machado Maldonado v. Barranco Colón*, 119 D.P.R. 563, 566 (1987); *Rivera v. Tribunal Superior*, 99 D.P.R. 276, 278 (1970).[6] De este modo, se elude la posibilidad de que cualquiera de las partes abuse de la utilización de los mecanismos de descubrimiento de prueba.[7]

Como consecuencia de la discreción que tienen, los tribunales de instancia quedan facultados para modificar el término establecido por la Regla 23.4 de Procedimiento Civil, 32 L.P.R.A. Ap. III, para concluir el descubrimiento de prueba, según las circunstancias particulares de cada caso. *Lluch v. España Service Sta.*, ante, pág. 742.[8] En el ejercicio de esta facultad, los tribunales deberán hacer un balance "entre dos intereses de gran importancia para el adecuado desenvolvimiento de la labor de impartir justicia a través del sistema judicial: de una parte deberán garantizar la pronta solución de las controversias,

---

[6] La discreción del foro de instancia no se limita a la etapa de descubrimiento de prueba, sino que se extiende a todos los procedimientos, pues el principio rector en todo nuestro ordenamiento procesal es lograr que los casos sean resueltos de forma justa, rápida y económica. *Rivera v. Insular Wire Products Corp.*, 140 D.P.R. 912, 929 (1996); *Unisys v. Ramallo Brothers*, 128 D.P.R. 842, 863 esc. 8 (1991). Véase también la Regla 1 de Procedimiento Civil, 32 L.P.R.A. Ap. III. Conforme a esta norma, los cánones de ética judicial establecen que *los jueces deberán intervenir durante el curso de cualquier procedimiento* "para evitar dilaciones injustificadas y para esclarecer cualquier extremo o impedir una injusticia". Canon XIV de Ética Judicial, 4 L.P.R.A. Ap. IV–A.

[7] Para evitar este abuso, y así proteger a cualquiera de las partes de hostigamiento, perturbación, opresión, gasto innecesario o molestia indebida, las reglas autorizan a los tribunales a emitir órdenes para regular el descubrimiento. Regla 23.2 de Procedimiento Civil, 32 L.P.R.A. Ap. III. Véanse, también: R. Hernández Colón, *Derecho Procesal Civil*, San Juan, Ed. Michie de P.R., 1997, Sec. 2808, págs. 226–229; *Ades v. Zalman*, 115 D.P.R. 514, 523 (1984).

[8] La Regla 23.4 de Procedimiento Civil, 32 L.P.R.A. Ap. III, dispone un término directivo de sesenta (60) días para concluir el descubrimiento de prueba, el cual comenzará a correr a partir de la notificación de la contestación a la demanda. Véase *Lluch v. España Service Sta.*, 117 D.P.R. 729, 742 (1986).

y de otra, velar por que las partes tengan la oportunidad de llevar a cabo un amplio descubrimiento de forma tal que en la vista en su fondo no surjan sorpresas". *Lluch v. España Service Sta.*, ante, págs. 742–743.([9])

No hemos de interferir con los tribunales de instancia en el ejercicio de sus facultades discrecionales, excepto en aquellas situaciones en que se demuestre que este último (1) actuó con prejuicio o parcialidad, (2) incurrió en un craso abuso de discreción, o (3) se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo. *Lluch v. España Service Sta.*, ante, pág. 745. La tarea de determinar cuándo un tribunal ha abusado de su discreción no es una fácil. Sin embargo, no tenemos duda de que el adecuado ejercicio de discreción judicial está estrechamente relacionado con el concepto de razonabilidad. *Pueblo v. Dávila Delgado*, 143 D.P.R. 157, 171 esc. 15 (1997); *Pueblo v. Ortega Santiago*, 125 D.P.R. 203, 211 (1990); *Pueblo v. Sánchez González*, 90 D.P.R. 197, 200 (1964).

En el caso de autos, el 22 de septiembre de 1999 el B.P.P.R. solicitó del tribunal que emitiera una orden dirigida a las instituciones pertinentes para que se le permitiera descubrir la información contenida en los récords médicos del causante. Posteriormente, reiteró su petición el 21 de diciembre de ese mismo año. El tribunal de instancia emitió la orden solicitada el 25 de enero de 2000, notificando la misma el 31 de enero. La vista estaba señalada para el 9 de febrero, por lo que el B.P.P.R. contaba con tan sólo nueve (9) días para diligenciar la orden y evaluar la evidencia obtenida. Ante esta situación, el 1ro de febrero el

---

([9]) En lo que respecta a esta facultad —la de alterar el término para completar el descubrimiento de prueba—, la discreción del foro judicial se limita a extender o reducir el término. Esto implica que en casos ordinarios los tribunales no pueden negar a una parte la oportunidad de realizar descubrimiento, cuando dicha opción ha sido ejercida dentro del término dispuesto por las reglas. "Claro está, ello no afecta la facultad de regular su extensión en orden a objeciones de onerosidad, opresión, privilegio u otras razones válidas". *Machado Maldonado v. Barranco Colón*, 119 D.P.R. 563, 566 (1987).

B.P.P.R. radicó una moción solicitando la posposición de la vista. El foro de instancia declaró sin lugar la moción, no obstante haber tardado alrededor de cuatro (4) meses para emitir la orden.

Como indicáramos anteriormente, el fin perseguido por el descubrimiento de prueba es permitir a las partes obtener información necesaria para la preparación del juicio, de modo que puedan precisar los asuntos en controversia y descubrir la verdad de lo ocurrido. Para dar cumplimiento a este objetivo, los tribunales deben conceder *un tiempo razonable* para que ambas partes puedan completar su descubrimiento, evaluar la información obtenida, y así estar en mejor posición de presentar su caso. En la controversia ante nuestra consideración, el B.P.P.R. demostró que existía justa causa para extender el descubrimiento y posponer la celebración del juicio en su fondo. De igual forma, no surge del expediente que haya incurrido en alguna actuación negligente. Debido a ello, resolvemos que el tribunal de instancia actuó de forma arbitraria y caprichosa al no posponer la celebración de la vista y. extender el término para completar el descubrimiento de prueba.[10] En el balance de intereses, consideramos que esta es una solución justa pues no podemos penalizar a una parte por el atraso de los tribunales de instancia en atender y resolver las mociones ante su consideración.

## II

En su segundo señalamiento de error, el B.P.P.R. sostiene que el tribunal de instancia debió evaluar, antes de la celebración de la vista, la capacidad de la tercera demandada Luz Nereida Rivera Durán. Según surge del recurso, dicha petición está basada en una deposición tomada al

---

[10] Respecto al carácter discrecional de la suspensión o posposición de un juicio, véase *Sucn. Pagán Lozada v. Berríos Berdecía*, 84 D.P.R. 624, 628 (1962).

tercero demandado Mario C. Gutiérrez Pérez, donde éste declaró que su esposa, Luz Nereida Rivera Durán, padece de la enfermedad de Alzheimer. El B.P.P.R. aduce que esta declaración es más que fundamento razonable para que el tribunal evalúe la capacidad mental de la tercera demandada, pues esta condición tiende a afectar la memoria y capacidad de las personas que la padecen.

Como norma general, en nuestro sistema de derecho existe una presunción de sanidad o capacidad mental. *Jiménez v. Jiménez*, 76 D.P.R. 718, 733 (1954). Véanse, también: *Pueblo v. Marcano Pérez*, 116 D.P.R. 917, 927 (1986); *Pueblo v. Alsina*, 79 D.P.R. 46, 60 (1956). Dicha capacidad puede quedar restringida por diversas condiciones, tales como la minoría de edad, la demencia y la prodigalidad, entre otras. Estas condiciones son solamente *restricciones a la capacidad de obrar y no prohibiciones*, por lo que pueden ser subsanadas mediante medios supletorios. Art. 25 del Código Civil, 31 L.P.R.A. sec. 82; J. Castán Tobeñas, *Derecho Civil español, común y foral*, 14ta ed. rev., Madrid, Ed. Reus, 1984, T. 1, Vol. II, pág. 165.[11]

La incapacidad de una persona solamente puede ser solicitada por el cónyuge, los parientes del presunto incapaz y el Fiscal. Véanse los Arts. 181 y 182 del Código Civil, 31 L.P.R.A. secs. 704 y 705. Por lo tanto, generalmente, una parte en un pleito no puede solicitar al

---

[11] Uno de los medios establecidos por el Código Civil para subsanar la falta de capacidad mental es el nombramiento de un tutor. Véase el Art. 167 del Código Civil, 31 L.P.R.A. sec. 661. Para que dicha acción proceda, deberá preceder una declaración judicial de que la persona está incapacitada para administrar sus bienes, pues, como indicáramos anteriormente, existe una presunción de sanidad o capacidad mental. Art. 180 del·Código Civil, 31 L.P.R.A. sec. 703. Una vez declarada incapaz judicialmente, las Reglas de Procedimiento Civil exigen que la persona comparezca por medio de su tutor, quedando así subsanada su incapacidad. Regla 15.2 de Procedimiento Civil, 32 L.P.R.A. Ap. III. La parte demandante tendrá que entregar copia del emplazamiento tanto a la parte como a su tutor. Regla 4.4(c) de Procedimiento Civil, 32 L.P.R.A. Ap. III. Este requisito es de cumplimiento estricto, pues de lo contrario el tribunal no adquirirá jurisdicción sobre la persona del demandado. *First Bank of P.R. v. Inmob. Nác., Inc.*, 144 D.P.R. 901, 913–914 (1998); *Rodríguez v. Nasrallah*, 118 D.P.R. 93, 98 (1986); *Pagán v. Rivera Burgos*, 113 D.P.R. 750, 754 (1983).

tribunal que declare incapaz a la parte contraria. No obstante, a partir de la aprobación de las Reglas de Procedimiento Civil de 1979, se impuso al demandante, su abogado o la persona que diligencia el emplazamiento, *la obligación* "de informar al tribunal la condición mental del demandado, cuando este hecho es de su conocimiento o tiene motivos fundados para así creerlo, de suerte que, el tribunal proceda a tomar las medidas necesarias para determinar la cuestión de la capacidad mental, en su caso, nombrando un defensor 'ad litem', según establece la Regla 15.2(b) de Procedimiento Civil". Informe sometido por el Comité sobre Procedimiento Civil de la Conferencia Judicial de Puerto Rico según revisado por el Secretariado de la Conferencia Judicial, noviembre 1978, pág. 12. Dicha obligación fue incorporada a las Reglas de Procedimiento Civil como resultado de la decisión emitida por este Tribunal en *Hernández v. Zapater*, 82 D.P.R. 777 (1961).

A estos efectos, la Regla 4.4(c) de Procedimiento Civil, 32 L.P.R.A. Ap. III, fue enmendada para disponer que: "En todos los demás casos en que el demandante, su abogado o la persona que diligencie el emplazamiento tenga fundamento razonable para creer que la persona a ser emplazada está incapacitada mentalmente, *deberá notificarlo al tribunal* para que éste proceda de acuerdo a lo dispuesto en la Regla 15.2(b)." (Énfasis suplido.) Según surge del historial legislativo y del texto de la Regla 4.4(c), *supra*, dicha obligación no se limita a la etapa previa o coetánea al emplazamiento, *sino que es una continua* fijada al demandante, su abogado o la persona que diligencia el emplazamiento. Véase Informe, ante. Así, de existir un fundamento razonable en una etapa posterior al emplazamiento para creer que la parte demandada está

incapacitada, habrá una obligación de notificarlo al tribunal.[12]

Una vez notificado el tribunal de instancia sobre la posibilidad de que un demandado esté incapacitado, y existiendo fundamento razonable para ello, *vendrá obligado dicho foro a hacer una determinación sobre el estado mental de la parte.* Regla 15.2(b) de Procedimiento Civil, 32 L.P.R.A. Ap. III.[13] Basado en esta determinación, decidirá el tribunal si procede o no el nombramiento de un defensor judicial a la parte.[14] Íd. Contrario a la determinación sobre el estado mental —la cual es obligatoria en estos casos— la decisión de nombrar un defensor judicial es una que estará sujeta a un *criterio de conveniencia*, según se desprende del texto del inciso (b) de la Regla 15.2 de Procedimiento Civil, 32 L.P.R.A. Ap. III.[15] Debido a ello, el tribunal podrá no tomar dicha acción aun cuando haya determinado que la persona está incapacitada, pues tiene la discreción de establecer cualquier otra medida para proteger los intereses de esta parte,[16] la cual determinación

---

[12] El incumplimiento de esta obligación no priva al tribunal de jurisdicción, pues la Regla 4.4(c) de Procedimiento Civil, ante, no dispuso un procedimiento particular para emplazar a una persona incapacitada no declarada judicialmente como tal ni recluida en una institución para el tratamiento de enfermedades mentales. Véase Regla 4.4(c) de Procedimiento Civil, ante. Debido a ello, "la jurisdicción sobre una persona loca puede ser obtenida ordinariamente por el mismo procedimiento como si fuera cuerda". *Hernández v. Zapater,* 82 D.P.R. 777, 798 (1961). Véase también 53 *Am. Jur. 2d Mentally Impaired Persons* Sec. 170 (1996).

[13] El inciso (b) de la Regla 15.2 de Procedimiento Civil, 32 L.P.R.A. Ap. III, dispone: "En los casos previstos en la última oración de la Regla 4.4(c) y en la Regla 22.2, el tribunal *determinará sobre el estado mental de la parte y, si es conveniente y procede, el nombramiento de un defensor judicial.*" (Énfasis suplido.)

[14] Un defensor judicial es un tutor especial que se nombra a un menor o incapacitado para que le represente en un pleito específico. *Fernández Martínez v. Tribunal Superior,* 89 D.P.R. 754, 758 (1964).

[15] Previamente hemos señalado que el nombramiento de un defensor judicial es materia procesal. *Hernández v. Zapater,* ante, pág. 801; *Tyrell v. Saurí,* 71 D.P.R. 460, 470 (1950); *Trueba v. Martínez,* 33 D.P.R. 461, 474 (1924).

[16] La Regla 17 de Procedimiento Civil Federal, 28 U.S.C.A., dispone claramente sobre la discreción de los tribunales de distrito para nombrar un defensor judicial. Al respecto, el inciso (c) de esta disposición establece: "The court shall appo-

estará guiada por el principio rector de todo nuestro orde-
namiento procesal de lograr que los casos sean resueltos de
una forma justa, rápida y económica. Véase escolio 6, ante.

En el caso ante nuestra consideración, el B.P.P.R. pre-
sentó una moción notificando al tribunal sobre la posibili-
dad de que la tercera demandada, Luz Nereida Rivera Du-
rán, estuviese incapacitada. El tribunal de instancia
declaró no ha lugar la moción por entender que la misma
no procedía automáticamente por una simple expresión o
preocupación de un abogado y, además, por ésta estar de-
bidamente representada por abogado. A base de los hechos
presentados, resolvemos que erró dicho foro judicial al no
evaluar la condición mental de la antes mencionada ter-
cera demandada.

Conforme lo expresado anteriormente,
cuando exista fundamento razonable para creer que un de-
mandado está incapacitado y el tribunal sea notificado so-
bre tal hecho, éste vendrá obligado a evaluar el estado
mental del demandado. Ello resulta ser un imperativo del
debido proceso de ley.[17] En la controversia bajo nuestra
consideración, el B.P.P.R. advino en conocimiento de que la
tercera demandada posiblemente padecía de la condición
de Alzheimer; hecho que, a nuestro juicio, constituye un
cuestionamiento de la "capacidad mental" de dicha
persona. Además, notificó de esta situación al tribunal, por

---

int a guardian ad litem for an infant or incompetent person not otherwise represen-
ted in an action *or* shall make such other order as it deems proper for the protection
of the infant or incompetent person." (Énfasis suplido.) Íd. Sin embargo, en aquellos
casos en que determine no nombrar un defensor judicial, deberá tomar alguna otra
medida para proteger los intereses del incapacitado. Véase *Gardner by Gardner v.
Parson*, 874 F.2d 131, 140 (3er Cir. 1989).

[17] El debido proceso de ley, en su vertiente procesal, impone al Estado la
obligación de garantizar un procedimiento justo y equitativo al interferir con los
intereses de libertad y de propiedad de un individuo. Al aplicar este principio, cada
caso deberá ser evaluado a base de sus circunstancias particulares. *P.A.C. v. E.L.A. I*,
150 D.P.R. 358 (2000); *Rivera Rodríguez & Co. v. Lee Stowell, etc.*, 133 D.P.R. 881,
887 (1993). En conformidad con este principio constitucional, el tribunal vendrá obli-
gado a evaluar el estado mental de un demandado, siempre que se cumplan los
requisitos antes expresados, pues de esa forma se garantiza un proceso justo y equi-
tativo, tanto a éste como al demandante.

lo que concluimos que era obligación de dicho foro considerar su estado mental antes de la celebración del juicio.

Finalmente, es importante señalar que el hecho de que la tercera demandada estuviese representada por abogado no exonera al tribunal de evaluar su condición mental y de tomar las medidas necesarias. Adviértase que el simple hecho de estar representada por un abogado no implica que estén debidamente protegidos los intereses del incapacitado. Véase 6A *Wright, Miller & Kane, Federal Practice and Procedure* Sec. 1570, págs. 503–504 (1990).

Por los fundamentos antes expresados, *se expide el auto y se dicta sentencia revocatoria de la resolución emitida por el Tribunal de Circuito de Apelaciones, devolviéndose el caso al Tribunal de Primera Instancia, Sala Superior de Mayagüez, para la continuación de los procedimientos en conformidad con lo antes expresado.*

La Juez Asociada Señora Naveira de Rodón concurrió con el resultado sin opinión escrita. El Juez Asociado Señor Fuster Berlingeri disintió sin opinión escrita.

