El Juez Asociado Señor Rivera Pérez
emitió la opinión del Tribunal.
Por medio del presente recurso de certiorari, se nos so-licita que revisemos una Sentencia que emitió el Tribunal de Apelaciones, la cual revoca una Orden dictada por el Tribunal de Primera Instancia. La Orden permitía la pre-sentación de un disco audiovisual, en DVD, para impugnar la credibilidad de la codemandante recurrida, Sra. Lilliam Berríos Falcón, luego de ésta haber testificado, ser contra-interrogada y haber desfilado toda su prueba. Los deman-dados peticionarios, Sr. Miguel A. Torres Miranda, Sr. Néstor Rullán Ruiz y Puerto Rican American Insurance Company, alegan que el foro apelativo intermedio erró al considerar que la presentación de la prueba impugnatoria fue tardía e improcedente en derecho.
Analicemos los hechos que dieron paso a la presente controversia, así como el trámite procesal seguido en el caso ante nuestra consideración.
I
Como la controversia que se nos presenta es estricta-mente procesal y los hechos están pendientes de adjudica-ción en el Tribunal de Primera Instancia, reseñaremos los hechos relevantes de forma sucinta.
El 6 de mayo de 2003, la señora Berríos Falcón conducía su vehículo de motor y el señor Torres Miranda conducía un camión propiedad del señor Rullán Ruiz. Alegada-mente, cuando el señor Torres Miranda salió de una inter-sección, no se detuvo ante una señal de “PARE”, e impactó el vehículo que conducía la señora Berríos Falcón.
El 12 de abril de 2004, la señora Berríos Falcón pre-sentó una demanda por los daños que alega sufrió a causa del accidente. Entre sus alegaciones reclamó haber sufrido *966 serias contusiones en las regiones cérvico-dorsal y lumbar. Manifestó que las lesiones sufridas afectaron su capacidad para desempeñar sus labores cotidianas y alteraron su es-tilo de vida debido a que continúa afectada tanto física como psicológicamente. Por ello, la demandante reclamó daños generales y especiales.
El 29 de noviembre de 2004, los demandados peticiona-rios sometieron la contestación al interrogatorio que les envió la demandante recurrida. En éste, específicamente en las preguntas nueve y diecisiete, contestaron lo si-guiente: en la pregunta nueve indicaron que incluyeron toda la documentación que hasta ese momento se había re-copilado, indistintamente del uso que se le daría en el jui-cio; en la pregunta diecisiete manifestaron que se había sometido toda la prueba recopilada hasta ese momento.(1)
El 4 de febrero de 2005, la señora Berríos Falcón fue intervenida quirúrgicamente para insertarle unas varillas en su espalda para proteger su columna vertebral. La se-ñora Berríos Falcón expresó que luego de la operación con-tinuó sufriendo dolores intensos en la espalda y su movi-miento corporal se limitó.
En mayo de 2005, la señora Berríos Falcón y el Sr. Gregorio López Serrano contrajeron matrimonio, y el 29 de diciembre de 2005 presentaron una enmienda a la de-manda para incluir a la sociedad legal de gananciales com-puesta por estos. En la demanda enmendada levantaron por primera vez una alegación de incapacidad total tanto física como psicológica, reclamaron en beneficio de la socie-dad legal de gananciales un lucro cesante por $644,523. De igual forma, la codemandante recurrida, señora Berríos Falcón, reclamó una indemnización por $250,000 por da-ños físicos y $100,000 por daños emocionales. Durante la etapa preparatoria al juicio, específicamente en septiembre de 2005, los demandantes recurridos se trasladaron a vivir a Springfield, Massachusetts.
*967 El 17 de junio de 2008, los demandados peticionarios, en su desfile de prueba presentaron ante el Tribunal de Pri-mera Instancia una moción titulada MOCI[Ó]N UR-GENTE INFORMANDO INDISPONIBILIDAD DE PE-RITO PARA CONTINUACI [Ó]N DE JUICIO Y OTROS EXTREMOS en la cual, entre otras cosas, solicitaron la posposición de una vista judicial y un permiso para presen-tar un DVD con supuesta prueba impugnatoria. (2) El 26 de junio de 2008, los demandantes recurridos replicaron me-diante una moción titulada OPOSICI[Ó]N A MOCI[Ó]N SOBRE PRESENTACION DE ALEGADA PRUEBA DE IMPUGNACI [Ó] N.(3)
El Tribunal de Primera Instancia resolvió la moción de los demandados peticionarios con un NO HA LUGAR la posposición de la vista judicial y declaró un HA LUGAR la presentación del DVD como prueba de impugnación diri-gida a atacar el testimonio de la codemandante recurrida, señora Berríos Falcón. La Orden se dictó el 24 de junio de 2008.(4) El foro judicial primario no se expresó sobre la moción en oposición de los demandantes recurridos y éstos sometieron una moción de reconsideración,(5) la cual fue declarada “NO HA LUGAR”. Dicha Orden se emitió el 8 de julio de 2008 y notificada el 11 de julio del mismo año.(6)
Inconformes, los demandantes recurridos presentaron un recurso de certiorari ante el Tribunal de Apelaciones. En síntesis, alegaron que el Tribunal de Primera Instancia erró al declarar “HA LUGAR” la presentación del DVD por ser prueba tardía e improcedente en derecho. Igualmente, alegaron que los demandados tuvieron la oportunidad de realizar la vigilancia mediante la cual obtuvieron el DVD antes de la Conferencia con Antelación al Juicio cuando la *968 codemandante recurrida, señora Berríos Falcón, viajó a Puerto Rico para la toma de deposición así como cuando vino para ser evaluada por los peritos de las partes.
Los demandados peticionarios replicaron. Alegaron que no entablaron la vigilancia antes del descubrimiento de prueba ni de la Conferencia con Antelación al Juicio por-que a su juicio no era necesario en ese momento. Los fun-damentos expuestos ante el Tribunal de Apelaciones fue-ron los siguientes: (1) que la evaluación del perito en medicina física de los demandados peticionarios se realizó en enero de 2005, cuando la codemandante recurrida, se-ñora Berríos Falcón, no había sido intervenida quirúrgica-mente; (2) que la deposición que se le tomó a la codeman-dante recurrida, señora Berríos Falcón, luego de la demanda enmendada, se realizó el 27 de julio de 2006 y para esa fecha sólo existían meras alegaciones de incapa-cidad total, tanto en el aspecto físico como en el emocional, ello debido a que los demandantes recurridos no habían sometido ningún tipo de prueba documental o pericial de-mostrativa de tal incapacidad; (3) que los demandantes re-curridos suspendieron los servicios del perito psiquiátrico que habían utilizado y quien había rendido su informe pe-ricial el 6 de septiembre de 2006. Alegaron los demandados peticionarios que la suspensión del perito psiquiátrico de los demandantes recurridos los dejó sin perito alguno que sustentara su alegación de incapacidad; (4) varios meses después, los demandantes recurridos contrataron a un nuevo perito psiquiátrico quien evaluó a la codemandante recurrida, señora Berríos Falcón, el 15 de enero y 15 de febrero de 2007, y el informe pericial les fue sometido el 5 de marzo de 2007, a menos de sesenta días de iniciar el juicio, y para esa fecha los demandantes recurridos resi-dían fuera de Puerto Rico; (5) la visita a Puerto Rico de la señora Berríos Falcón para la evaluación del perito psi-quiátrico de los demandado peticionarios ocurrió durante febrero y marzo de 2007, y el informe se rindió el *969 15 de abril de 2007, a menos de treinta días de dar co-mienzo el juicio; (6) el 23 de abril de 2007, a sólo quince días de dar comienzo el juicio, la parte demandante recu-rrida les informó que el 19 de marzo de 2007 la Adminis-tración del Seguro Social incapacitó a la señora Berríos Falcón en su aspecto emocional, y (7) la parte demandada peticionaria solicitó todos los documentos que le fueron so-metidos a la Administración del Seguro Social para la eva-luación correspondiente y en ese entonces se percataron de que los demandantes recurridos solicitaron la declaración de incapacidad tanto en el aspecto físico como en el emo-cional; sin embargo, dicha entidad no reconoció la incapa-cidad física de la señora Berríos Falcón.
Por lo expuesto, los demandados peticionarios comenza-ron la vigilancia el 9 de mayo de 2007,, a solo un día de haber comenzado el desfile de prueba de los demandantes recurridos y la concluyeron en febrero de 2008. Para esa fecha la señora Berríos Falcón ya había testificado. La existencia del DVD se les notificó a los demandantes recu-rridos el 20 de febrero de 2008, cuatro meses antes de soli-citar mediante moción la presentación del DVD como prueba impugnatoria. Ante tal ofrecimiento de prueba, el representante legal de los demandantes recurridos indicó que lo iba a objetar por no haberse presentado en el descu-brimiento de prueba, así como por no formar parte de la prueba anunciada en el Informe de la Conferencia con An-telación al Juicio.(7)
Ante los argumentos expuestos, el Tribunal de Apelacio-nes revocó al Tribunal de Primera Instancia, el cual de-claró “ha lugar” la presentación del DVD con la supuesta prueba impugnatoria. En epítome, el foro apelativo inter-medio resolvió lo siguiente:
[S]e permitió la presentación de un video que estaba en po- *970 der de la parte demandada-recurrida desde antes de la cele-bración del juicio.
[C]abe señalar que el error señalado fue cometido. En primer lugar, este caso comenzó en el año 2004 y desde ... julio de 2004 se le remitió a la parte demandada-recurrida un reque-rimiento de documentos que en su pregunta # 17 le solicitaba cualquier documento que pudiera ser utilizado en el pleito, sometiendo copia del mismo. ...
Las Reglas de Procedimiento Civil, en cuanto a descubri-miento de prueba se refieren, exigen un deber continuo de informar ... la existencia del video a la parte demandante-peticionaria y ésta manifestó su objeción a que se presentara en el juicio.
[N]o hay razón ni justificación para que los demandados-recurridos hayan esperado a que el juicio se estuviera cele-brando y la parte demandante-peticionaria presentara su prueba, para curar su estrategia de presentar el video sorpresivamente. (Énfasis suplido.(8)
Inconformes con el dictamen del Tribunal de Apelacio-nes, los demandados presentaron una moción de reconside-ración la cual fue denegada.(9) Ante este cuadro fáctico, los demandados sometieron un recurso de certiorari ante nos, en el cual señalan, en esencia, la comisión del error si-guiente:
Err[ó\el Tribunal de Apelaciones al revocar al [Tribunal de Primera Instancia], determinando, como cuestión de hechos, que la resolución dictada el 18 de julio de 2008, [por el foro judicial primario] permitió la presentación de un vídeo que estaba en poder de la parte demandada recurrida, desde antes de la celebración del juicio. (Énfasis en el original.)
II
Expuesto el trámite procesal seguido en el caso, proce-demos a analizar el derecho aplicable.
*971 La Regla 23.1 de Procedimiento Civil (10) dispone una obligación continua de informar a la parte contraria sobre cualquier prueba que se obtenga y se pretenda utilizar durante el juicio. Dicha obligación no depende del conocimiento o desconocimiento que tenga la otra parte de la existencia de la prueba: siempre existe el deber de informarla. El descubrimiento de la prueba persigue lo siguiente: (1) minimizar las controversias litigiosas; (2) obtener la evidencia que va a ser utilizada durante el juicio, evitando así posibles sorpresas; (3) facilitar la búsqueda de la verdad, y (4) perpetuar evidencia.(11)
Hemos expresado que el alcance del descubrimiento de prueba debe ser amplio y liberal(12) A pesar de lo expuesto, el Tribunal de Primera Instancia tiene entera discreción para establecer las reglas que entienda necesarias para llevar a cabo el descubrimiento. Esta discreción del foro primario no se limita a la etapa del descubrimiento de prueba, sino que se extiende a todos los procedimientos posteriores, pues el principio rector en todo nuestro ordenamiento procesal es lograr que los casos se resuelvan justa, rápida y económicamente.(13) Conforme a esta norma, los cánones del Código de Ética Judicial establecen que los jueces deberán intervenir durante el curso de cualquier procedimiento “para evitar dilaciones injustificadas y para esclarecer cualquier extremo o impedir una injusticia”.(14)
La controversia central que se nos presenta podría sin-tetizarse en lo siguiente: ¿Es tardía y, por ende, la presen-tación del DVD viola las normas sobre el descubrimiento de *972 prueba la presentación del DVD? Para contestar esta inte-rrogante debemos analizar —en el caso ante nos— la ad-misibilidad de la prueba de impugnación a un testimonio por contradicción.
Hemos expresado que “toda prueba pertinente a la veracidad o mendacidad de un testigo es prima facie admisible para evaluar su credibilidad”.(15) Es harto conocido que la Regla 44 de Evidencia,(16) no provee un listado taxativo sobre los métodos para impugnar a un testigo, ya que los medios de impugnación son numeras apertus.(17) La Regla 44 de Evidencia, supra, dispone en su inciso (b) que la credibilidad de un testigo puede ser impugnada mediante la presentación de cualquier evidencia pertinente. La Regla 18 de Evidencia(18) estatuye que la evidencia pertinente es aquella que tiende a hacer un hecho en controversia más o menos probable. La pertinencia debe dirigirse a la controversia del caso o a la credibilidad del testigo. La evidencia pertinente siempre tiene que tener algún valor probatorio por más mínimo que sea. No es necesario que su suficiencia sea a tal nivel que aclare el hecho en controversia, basta con que ayude al juez en su análisis sobre si el hecho en disputa ocurrió o no.(19)
A pesar de lo anterior, debe siempre tenerse en cuenta la Regla 19 de Evidencia,(20) la cual dispone cinco criterios que debe considerar el Tribunal de Primera Instancia antes de admitir evidencia que aunque sea pertinente pueda causar: (1) perjuicio indebido; (2) probabilidad de confusión; (3) desorientación al Jurado; (4) dilación in- *973 necesaria de los procedimientos, o (5) innecesaria presen-tación de prueba acumulativa. En suma, la Regla 19, supra, le concede discreción al Tribunal de Primera Instancia para excluir evidencia que aunque sea pertinente pueda caer bajo cualquiera de las cinco categorías mencionadas.
La prueba impugnatoria se divide en dos tipos: la “específica” y la “no específica”.(21) Clasificamos dentro de la categoría “específica” la impugnación a un testigo con cualquier prueba directa que ataque su testimonio y tienda a establecer que el testigo ha incurrido en contradicciones.(22) La contrapartida es la impugnación mediante el uso de evidencia “no específica”, la cual se dirige a atacar a un testigo de forma general. Entre las causas “no específicas” se encuentran las impugnaciones por parcialidad e interés.(23) Por ello, la prueba extrínseca para impugnar a un testigo por contradicción es rutinariamente admisible.
Hemos expresado que “cualquier evidencia ex-trínseca será admisible para contradecir lo declarado por el testigo y demostrar que mintió en la silla testifical”.(24) En el caso ante nos es necesario exponer las normas que el Tribunal de Primera Instancia tiene que ponderar para sostener la admisibilidad de una prueba impugnatoria por contradicción mediante el uso de evidencia extrínseca en las diferentes etapas del procedimiento judicial. La impugnación por contradicción se puede realizar de diferentes maneras. Para ser precisos se puede impugnar en: (1) el contrainterrogatorio, el cual es el método más utilizado; (2) mediante la presentación de otro testigo cuyo testimonio contradiga lo testificado por el testigo que se pretende impugnar; (3) mediante conocimiento judicial, o (4) mediante *974 la presentación de evidencia material o documental.(25) Cuando se pretende impugnar la credibilidad de un testigo, el Tribunal de Primera Instancia debe sopesar si la impug-nación que se pretende llevar a cabo es a base de evidencia extrínseca colateral o no colateral.(26)
La evidencia colateral, como antes expuesto, es aquella que no va directamente a la controversia litigiosa, sino que meramente pretende atacar algo que no es relevante para resolver el caso. La evidencia extrínseca colateral, en ciertas ocasiones, tiende a dilatar innecesariamente el procedimiento judicial, puede crear confusión, provocar errores inadvertidos o perjuicio indebido.(27) La evidencia no colateral es aquella que va dirigida a una de las controversias litigiosas del caso y se puede utilizar para impugnar la credibilidad de un testimonio, tanto con evidencia extrínseca testifical, material o documental. (28) Un ejemplo de evidencia no colateral admisible para impugnar por contradicción es prueba que tienda a contradecir las incapacidades físicas y mentales declaradas por un testigo. (29) Claro está, quien determina en primera instancia si lo que se pretende presentar es colateral o no recae en la sana discreción del Tribunal de Primera Instancia, quien es el juzgador de los hechos. Es imprescindible mencionar que cuando se impugna por contradicción en un contrainterrogatorio no hay diferencia si lo que se pretende establecer es colateral o no. Este método de impugnación es la excepción a la norma sobre el asunto de la colateralidad.(30) Las únicas limitaciones son las que establecen las propias Reglas de Evidencia. Por ello, la prueba de impugnación por con- *975 tradicción sólo se puede admitir para demostrar las false-dades o incongruencias de un testimonio, nunca para pro-bar conducta específica en determinado momento.(31)
 La impugnación de los testigos es uno de los mecanismos más eficaces para el descubrimiento de la ver-dad, principio cardinal de nuestro sistema de justiciad.(32) Si bien el propósito de la prueba de impugnación es menosca-bar la credibilidad del testigo, ésta no se puede utilizar como un subterfugio para introducir evidencia que de otra forma no se podría admitir. (33) En síntesis, el propósito de la impugnación por contradicción es simplemente atacar instancias específicas del testimonio del declarante, de-mostrando que la declaración prestada es falsa, inexacta, poco probable o errónea. El principio cardinal es que con-tradiga lo declarado por el testigo frente al juzgador de los hechos.(34)
III
El Tribunal de Apelaciones determinó en su Sentencia que los demandados aquí peticionarios tenían en su poder el DVD con la supuesta prueba impugnatoria antes de co-menzar el juicio en su fondo. No le asiste la razón. El dic-tamen del foro apelativo intermedio no se sostiene del ex-pediente judicial. La controversia ante nos es determinar si el Tribunal de Primera Instancia erró al permitir el uso del DVD como prueba de impugnación por contradicción luego de haber culminado el desfile de prueba de los de-mandantes recurridos.
Los demandados aquí peticionarios, como mencionára-mos en el acápite I, confrontaron diversos problemas en la *976 etapa preparatoria del juicio, lo que provocó una dilación tanto para descubrir pruebas pertinentes así como para fortalecer su teoría legal. Veamos: (1) el perito en medicina física de los demandados recurridos evaluó a la codeman-dante recurrida, señora Berríos Falcón, antes de que la operaran quirúrgicamente; (2) luego de presentar la de-manda enmendada, cuando los demandados peticionarios le tomaron la deposición a la codemandante recurrida, se-ñora Berríos Falcón, sólo existían meras alegaciones de in-capacidad total tanto en el aspecto físico como en el emo-cional, ello debido a que los demandantes recurridos no habían presentado ninguna prueba adicional que susten-tara dichas alegaciones de incapacidad total; (3) los de-mandantes recurridos suspendieron los servicios de su pe-rito psiquiátrico, lo que provocó incertidumbre en la parte demandada peticionaria debido a que carecían de la cer-teza de que los demandantes recurridos contrataran los servicios de un nuevo perito psiquiátrico; (4) varios meses después de haber suspendido los servicios del primer pe-rito psiquiátrico, los demandantes recurridos contrataron a otro perito psiquiátrico cuyo informe pericial le fue some-tido a los demandados peticionarias sesenta días antes de que comenzara el juicio y mientras la codemandada recu-rrida, señora Berríos Falcón, residía fuera de la jurisdic-ción de Puerto Rico; (5) los demandados peticionarios obtu-vieron el informe pericial de su perito psicológico a sólo treinta días de iniciar el juicio; (6) a quince días del juicio, los demandados peticionarios fueron notificados por los de-mandantes recurridos de que la señora Berríos Falcón fue declarada incapaz en el aspecto emocional por la Adminis-tración del Seguro Social; (7) los demandados peticionarios le solicitaron a los demandantes recurridos todos los docu-mentos que se le presentaron a la Administración del Se-guro Social y se percataron de que los demandantes recu-rridos también habían solicitado una declaración de incapacidad física —la cual les fue denegada por la Admi- *977 nistración del Seguro Social— dichos documentos se le en-tregaron a los demandados peticionarios a pocos días de iniciar el juicio.
Lo expuesto forzó a los demandados-peticionarios a rea-lizar una vigilancia al segundo día de iniciado el juicio para así poder indagar sobre la supuesta incapacidad total de la codemandante recurrida señora Berríos Falcón. El argu-mento de los demandantes recurridos de que la prueba fue sorpresiva carece de mérito debido a que ésta le fue notifi-cada con cuatro meses de anticipación a la solicitud de la presentación del DVD y la representación legal de los de-mandantes recurridos se negó a aceptarla porque iba a ob-jetarla, lo cual hizo.
Entendemos que dada la situación particular de este caso, una notificación de cuatro meses de anticipación a la presentación de la prueba es suficiente para no constituir una sorpresa, siempre y cuando el propósito del DVD sea impugnatorio y cumpla con lo dispuesto en el acápite II. Las razones expuestas por los demandados peticionarios para realizar la vigilancia —una vez comenzado el juicio en su fondo— son justificables y válidas, máxime cuando la codemandante recurrida, señora Berríos Falcón, no residía en Puerto Rico.
Por otro lado, y atendiendo la alegación de los deman-dantes recurridos, el que los demandados peticionarios ha-yan contestado las preguntas nueve y diecisiete del inte-rrogatorio que se les sometió no impide que los demandados peticionarios hayan tratado de obtener infor-mación adicional. Las contestaciones a las preguntas nueve y diecisiete del interrogatorio no permiten inferir que éstos iban a dejar de indagar o tratar de descubrir prueba adicional. Muestra de ello es que en la contestación a la pregunta número nueve alegaron que sometieron toda la información que hasta ese momento habían obtenido y en la pregunta diecisiete indicaron que sometieron toda la prueba hasta ese entonces recopilada. Estas expresiones no *978 son indicativas de que los demandados peticionarios desis-tirían de seguir investigando sobre el caso, más aún cuando la declaración de incapacidad y la prueba susten-tándola se les presentó a escasos días de dar comienzo a las vistas judiciales. El permitir tal alegación provocaría una desventaja indebida hacia la parta demandada peticionaria.

No obstante lo aquí expresado, resulta un deber ineludi-ble del Tribunal de Primera Instancia el cerciorarse sobre la debida autenticación del DVD con supuesta prueba im-pugnatoria por contradicción y determinar si cumple con los requisitos expuestos en el acápite II para su admisibilidad.

IV
Por lo anterior, nos resulta forzoso concluir que la con-tención en cuanto a que el DVD estaba en poder de los demandados peticionarios antes del juicio en su fondo ca-rece de méritos. Las gestiones realizadas por los demanda-dos recurridos para obtener la supuesta prueba impugna-toria se debió a la notificación tardía de los informes acreditativos de la supuesta incapacidad total, tanto física como emocional de la codemandante recurrida, señora Be-rríos Falcón, así como el hecho de que cambió su residencia fuera de la jurisdicción de Puerto Rico, hecho que clara-mente dificultó la labor investigativa de los demandados peticionarios.
Por todo lo antes expuesto, revocamos el dictamen recu-rrido emitido por el Tribunal de Apelaciones y devolvemos el presente caso al Tribunal de Primera Instancia para la continuación de los procedimientos acorde con lo aquí expresado.
El Juez Presidente Señor Hernández Denton concurrió con una opinión escrita, a la cual se unió la Juez Asociada Señora Rodríguez Rodríguez.

 Véase Apéndice del Certiorari, págs. 104-105.

 Íd., págs. 84-85.

 Íd., págs. 87-95.

 Íd., pág. 86.

 Íd., págs. 96-97.

 Íd., pág. 98.

 Informe de la Conferencia con Antelación al Juicio, esc. 3.

 Véase Apéndice del Certiorari, págs. 3-5.

 Íd., págs. 6-15.

 32 L.P.R.A. Ap. III.

 Rivera y otros v. Bco. Popular, 152 D.P.R. 140, 152 (2000).

 Rivera y otros v. Bco. Popular, supra; Aponte v. Sears Roebuck de P.R., Inc., 129 D.P.R. 1042, 1049 (1992); Ades v. Zalman, 115 D.P.R. 514, 518 (1984).

 Regla 1 de Procedimiento Civil, 32 L.P.R.A. Ap. III; Rivera y otros v. Bco. Popular, supra; Unisys v. Ramallo Brothers, 128 D.P.R. 842, 863 (1991).

 Canon XIV del Código de Ética Judicial, 4 L.P.R.A. Ap. IV-A; Rivera y otros v. Bco. Popular, supra.

 Pueblo v. Galindo González, 129 D.P.R. 627, 642 (1991). Véase Pueblo v. Figueroa Gómez, 113 D.P.R. 138, 142 (1982).

 32 L.P.R.A. Ap. IV.

 Pueblo v. Velázquez Colón, 174 D.P.R. 304 (2008); Pueblo v. Galindo González, supra; Pueblo v. Figueroa Gómez, supra.

 32 L.P.R.A. Ap. IV.

 Pueblo v. Rosaly Soto, 128 D.P.R. 729 (1991).

 32 L.P.R.A. Ap. IV.

 Pueblo v. Velázquez Colón, supra.

 Íd.

 Íd.

 Pueblo v. Galindo González, supra, pág. 644; Pueblo v. Velázquez Colón, supra.

 S.L. Emanuel, Emanuel law outlines, 5ta ed., Aspen, 2004, págs. 136-137.

 J.W. Strong, Me Cormick on Evidence, 4ta ed., Minnesota, Ed. West Publishing Co., 1992, Vol. I, págs. 182-188.

 Íd.

 Íd.

 Íd.

 Íd.

 Pueblo v. Galindo González, supra, pág. 644.

 Pueblo v. Velázquez Colón, supra.

 Pueblo v. Galindo González, supra, págs. 645-646; Ortiz v. Cruz Pabón, 103 D.P.R. 939 (1975).

 Pueblo v. Galindo González, supra, págs. 643-644.