ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| ROBERTO GONZÁLEZ LAGO, por sí y en representación de la SOCIEDAD LEGAL DE GANANCIALES COMPUESTA POR ROBERTO GONZÁLEZ LAGO Y MARÍA IRENE PORTELA RAMÍREZ<br><br>Recurridos<br><br>V.<br><br>ROSA MAXIMINA VARGAS SALES por sí y en representación de la comunidad de bienes post-gananciales; la SUCESIÓN DEL FINADO DAVID RELIS ACEVEDO CABRERA, compuesta por su viuda ROSA MAXIMINIA VARGAS SALES y ESTEBAN DAVID ACEVEDO VARGAS; MAYAGÜEZ CEMETERY, INC.<br><br>Peticionarios | KLCE202400162 | *Certiorari*<br>Procedente del Tribunal de Primera Instancia, Sala Superior de Mayagüez<br><br>Sobre:<br>Ejecución de Hipoteca, Propiedad Comercial, Cancelación o Restitución de Pagaré Extraviado, Cobro de Dinero-Ordinario<br><br>Caso Núm.:<br>MZ2021CV00959(307)<br>MZ2023CV01674(307) |

Panel integrado por su presidente, el Juez Rodríguez Casillas, la Jueza Mateu Meléndez y el Juez Marrero Guerrero.

Rodríguez Casillas, juez ponente.

## RESOLUCIÓN

En San Juan, Puerto Rico, a 21 de marzo de 2024.

Comparece ante nos la señora Rosa Maximina Vargas Sales y otros (en adelante, parte peticionaria) para que revoquemos la *Resolución* notificada el 10 de enero de 2024 por el Tribunal de Primera Instancia, Sala Superior de Mayagüez (en adelante, TPI).[1] Por virtud de esta, se declaró Ha Lugar la *Solicitud de Reconsideración* interpuesta por el señor Roberto González Lago (en

---

[1] Véase, Apéndice de la Parte Peticionaria, págs. 408-410.

adelante, el recurrido o señor González Lago), dejando sin efectos ordenes previas mediante las cuales se ordenó que el recurrido fuese evaluado para determinar su capacidad o no para ser depuesto.

Evaluado el recurso, resolvemos expedir el auto de *certiorari* y revocar el dictamen recurrido. Veamos.

**-I-**

El señor González Lago, su entonces esposa María Irene Portela Morales (QDEP) y la parte peticionaria suscribieron el **1 de agosto de 2001** un *Contrato de Compraventa de Acciones, Contrato de Prenda y sobre Garantía* (en adelante, el Contrato), en el cual, la parte peticionaria obtuvo todas las acciones de corporación Mayagüez Cemetery, Inc. (en adelante, Mayagüez Cemetery) por el precio convenido de $3,900,000.00.

Para asegurar el balance adeudado por la parte peticionaria, se suscribió un *Contrato de Garantía* y un *Pagaré Hipotecario* por la suma principal de $3,600,000.00 para garantizar el pago total y completo de las obligaciones contraídas en el Contrato.

Luego de 20 años de haberse otorgado el Contrato, surgió una controversia en torno a los pagos efectuados por la parte peticionaria al recurrido durante ese periodo de tiempo. Ante este cuadro, el señor González Lago presentó una *Demanda* —MZ2021CV00959— por cobro de dinero el **30 de junio de 2021**.[2] En síntesis, alegó que la parte peticionaria incumplió con su obligación de pago, por lo cual, la cuantía adeudada era líquida y exigible.

La parte peticionaria contestó la demanda y entre sus defensas afirmativas adujo que el Pagaré Hipotecario se le entregó al recurrido y se desconocía su paradero.[3] Arguyó, además, que el Contrato entre las partes fue objeto de múltiples modificaciones;

---

[2] Véase, Apéndice de la Parte Peticionaria, págs. 1-23.
[3] Véase, Apéndice de la Parte Peticionaria, págs. 26-31.

entre ellos, ajustes en los pagos de los plazos y moratorias en los pagos, a instancias del señor González Lago.

Luego de varios trámites procesales, la parte peticionaria se proponía deponer al señor González Lago como parte del descubrimiento de prueba. El **22 de noviembre de 2022** el recurrido presentó una *Moción Informativa Urgente sobre Descubrimiento de Prueba y Poder Duradero*.[4] Alegó que durante una reunión con sus representantes legales presentó dificultad para concentrarse y analizar asuntos medulares sobre su causa de acción. Específicamente, expresó que:

> *6. El 22 de noviembre de 2022, y de cara a la toma de testimonio oral de nuestro cliente, la abogada que suscribe se reunió con el demandante Roberto González Lago para la correspondiente preparación.*
>
> *7. No obstante, a pesar de que el señor González Lago ha participado activamente en el descubrimiento de prueba escrito y consistentemente ha mostrado conocimiento sobre los hechos que dan lugar al presente pleito, en la referida reunión presentó dificultad para concentrarse y analizar asuntos medulares sobre su causa de acción.*
>
> *8. Específicamente, nos hemos percatado que su memoria remota, así como su habilidad para analizar documentos, no es la idónea, y ello fue comunicado a la representación legal de la parte demandada el 123 de noviembre de 2022.[5]*

Por ello, le solicitó al TPI que tomara conocimiento, entre otros, que la deposición quedó cancelada. Junto con la moción se incluyó un *Poder Duradero* que data del 28 de febrero de 2017, donde el señor González Lago nombró tres apoderados, entre estos al señor Luis Núñez Salgado y al señor Leonardo Portela Torres (en adelante, los apoderados).[6] Se adjuntó, además, una carta del Dr. Arturo A. Ortiz Padua, neurólogo del señor González Lago, explicando que el recurrido tiene un diagnóstico de Alzheimer e *ictus cerebral* (*stroke*) desde el año 2017. Añadió el galeno que:

> *El Sr. Leonardo Portela nos indica que el paciente confronta un proceso legal, y próximamente sería sometido a una extensa deposición. Sin embargo, **debido a su proceso cognitivo, aunque no está en etapa severa**, el paciente tiene problemas*

---

[4] Véase, Apéndice de la Parte Peticionaria, págs. 112-116.
[5] Véase, Apéndice de la Parte Peticionaria, pág. 112.
[6] Véase, Apéndice de la Parte Peticionaria, págs. 119-126.

*de atención, concentración, y memoria. Ciertamente una deposición requiere un rango de atención y memoria intacta, y someter al paciente a dicha deposición presentara problemas de concentración y fatiga mental. No recomendamos que el paciente sostenga dicho interrogatorio.*

*El Sr. Leonardo Portela, sobrino del paciente, solicitó esta carta para propósitos informativos, accedió a divulgar la información médica detallada anteriormente, y a los términos a continuación. El recipiente de esta carta debe mantener la confidencialidad de esta información y no divulgarla a terceros sin el consentimiento expreso del Sr. Leonardo Portela, de acuerdo con la ley de privacidad HIPAA. **Esta carta es para propósitos informativos solamente y no necesariamente consiste en una declaración de incapacidad ante un tribunal, bajo el juramento correspondiente y con un testimonio pericial detallado por quien suscribe esta carta.** Si en un futuro una declaración por nuestra parte fuese eventualmente necesaria ante el tribunal, los arreglos correspondientes de honorarios por tal declaración deberán de hacerse con antelación a la vista en el tribunal a través de abogado.[7]*

Ante este cuadro, el recurrido sostuvo que sus condiciones cognitivas se agravarían si lo deponían.

El **27 de diciembre de 2022**, la parte peticionaria presentó una *Moción en Cumplimiento de Orden de Réplica y Solicitando Remedios*,[8] en la cual, solicitó al TPI que: se examinara el estado mental del señor González Lago, se continuara —manera limitada— con el descubrimiento de prueba y le ordenara a éste a cumplir con una *Resolución* emitida por el Tribunal Municipal de Guaynabo en el año 2019, en la cual se ordenó a la entonces representación legal del recurrido a presentar una petición sobre declaración de incapacidad ante el Tribunal de Primera Instancia, Sala Superior.[9] Además, dicho foro municipal ordenó que se le rindieran informes cada tres meses en cuanto al estado mental del señor González Lago.

El **23 de enero de 2023**, el TPI emitió una *Resolución y Orden* mediante la cual ordenó la presentación de la petición de incapacidad del recurrido en un término de 30 días y ordenó la

---

[7] Véase, Apéndice de la Parte Peticionaria, pág. 118.
[8] Véase, Apéndice de la Parte Peticionaria, págs. 146-154.
[9] Véase, Apéndice de la Parte Peticionaria, págs. 185-197.

paralización de los procedimientos hasta que se determinara la capacidad mental de este.[10]

El **13 de febrero de 2023**, el recurrido presentó una *Solicitud de Reconsideración.*[11] En ella, se expuso que el señor González Lago había presentado mecanismos efectivos y alternativas fundamentadas en derecho para evitar la paralización de los procedimientos. Arguyó que la referida *Resolución* a la cual la parte peticionaria hacía alusión, iba dirigida a la representante legal que en aquel entonces representaba al señor González Lago en un pleito independiente y aislado al caso de epígrafe. Por otra parte, señaló que la Sala Municipal —al emitir la orden en controversia— carecía de jurisdicción para atender asuntos sobre la incapacidad de los litigantes. Además, resaltó que el *Poder Duradero* atendía el asunto de la posible incapacidad del recurrido con el nombramiento de los apoderados. El TPI declaró *No Ha Lugar* la solicitud del recurrido.

Inconforme, el **28 de marzo de 2023** el señor González Lago acudió en *certiorari* ante este Panel —en el caso alfanumérico KLCE202300475—. En esencia, adujo que el TPI incidió al paralizar los procedimientos y al no permitir la utilización del *Poder Duradero.*[12]

Así, el **31 de mayo de 2023** emitimos una *Resolución* denegando el auto de *certiorari* por considerar que, además de cuestionarse la capacidad mental del señor González Lago, se alegaron ciertos actos, posiblemente indicativos, de una modificación de los términos del contrato, por lo que encontramos que el TPI no incidió al ordenar el cumplimiento con el trámite de la petición de incapacidad. Además, siendo la capacidad del señor González Lago un aspecto cuya aclaración resultaba necesaria para

---

[10] Véase, Apéndice de la Parte Peticionaria, págs. 213-214.
[11] Véase, Apéndice de la Parte Peticionaria, págs. 219-230.
[12] *Roberto González Lago, et al. v. Rosa Maximina Vargas Sales, et al.*, KLCE202300475.

la adjudicación de la demanda en sus méritos, tampoco encontramos que la determinación del TPI —de paralizar los procedimientos ante sí— hubiese constituido un error. En fin, esta Curia no encontró prejuicio, parcialidad o error craso para intervenir con la determinación del foro primario.

El **25 de septiembre de 2023**, el señor González Lago, representado por sus apoderados (en conjunto, la parte recurrida), presentó una segunda demanda —MZ2023CV01674— de cobro de dinero por los mismos hechos y elevó ante la consideración del TPI la existencia del *Poder Duradero*.

Ante este cuadro, el **28 de septiembre de 2023** la parte peticionaria presentó una *Moción Solicitando Orden* para que se ordenara el cumplimiento de la orden expedida por el TPI y confirmada por este foro apelativo en el KLCE202300475.

Más tarde, la parte recurrida solicitó la consolidación de los casos MZ2021CV00959 y MZ2023CV01674 porque "*ambas demandas comparten la misma parte demandante —representada por dos de sus apoderados—, los mismos hechos y la misma causa de acción*".[13]

El **2 de noviembre de 2023**, la parte recurrida presentó una *Moción en Cumplimiento de Orden.*[14] En apretada síntesis, alegó que con la comparecencia de los apoderados en el caso MZ2023CV01674, atendía la controversia en torno a la capacidad o falta de ella del señor González Lago. La parte peticionaria se opuso mediante *Replica Urgente a Moción en Cumplimiento de Orden y Solicitando se Ordene el Cumplimiento de la Orden de Manera Perentoria.*[15]

---

[13] Véase, Apéndice de la Parte Peticionaria, págs. 371-374.
[14] Véase, Apéndice de la Parte Peticionaria, págs. 375-377.
[15] Véase, Apéndice de la Parte Peticionaria, págs. 378-380.

Examinados los escritos, el **14 de noviembre de 2023**,[16] el TPI emitió una *Resolución y Orden.* Mediante esta, ordenó la consolidación de los casos MZ2021CV00959 y MZ2023CV01674. En las misma fecha, el foro de instancia emitió y notificó una segunda *Resolución y Orden,* donde ordenó a la parte recurrida a cumplir con la orden emitida el **23 de enero de 2023**, en un término de 30 días perentorios. Se le apercibió que el incumplimiento de esta orden conllevaría la desestimación del caso.[17]

Insatisfecha, el **15 de diciembre de 2023** la parte recurrida presentó ante el TPI una *Solicitud de Reconsideración.* [18] Oportunamente, la parte peticionaria se opuso mediante *Réplica Moción de Reconsideración* **el 18 de diciembre de 2023**.[19]

Luego de examinar los escritos de ambas partes, el **10 de enero de 2024** el TPI emitió una *Resolución Reconsideración y Orden,* declarando *Ha Lugar* la solicitud de reconsideración de la parte recurrida. Consecuentemente, el foro primario dejó sin efecto la ***Resolución y Orden* del 14 de noviembre de 2023**, por entender que el *Poder Duradero* había resuelto la controversia en torno a la capacidad del señor González Lago.

Inconforme, el **8 de febrero de 2024** la parte peticionaria compareció ante nos mediante *Petición de Certiorari* e imputó la comisión de los siguientes dos (2) errores:

> ***Primer Error:*** *El TPI incurrió en error manifiesto reconsiderar y dejar sin efecto su determinación de ordenar que se cumpliera con su orden para el cumplimiento de la Resolución del Tribunal de Guaynabo, del propio Tribunal de Primera Instancia y el mandato del Tribunal de Apelaciones sobre la incapacidad del recurrido Roberto González.*

---

[16] Notificada el 30 de noviembre de 2023.

[17] Recordemos que el **23 de enero de 2023**, el TPI emitió una *Resolución y Orden* mediante la cual ordenó la presentación de la petición de incapacidad del recurrido en un término de 30 días y ordenó la paralización de los procedimientos hasta que se determinara la capacidad mental de este. Véase, Apéndice de la Parte Peticionaria, págs. 213-214.

[18] Véase, Apéndice de la Parte Peticionaria, págs. 392-402.

[19] Véase, Apéndice de la Parte Peticionaria, págs. 405-407.

> ***Segundo error:*** *El TPI incurrió en error manifiesto al dejar sin efecto su determinación de ordenar que se cumpliera con su orden para el cumplimiento de la Resolución del Tribunal de Guaynabo, del Propio Tribunal de Primera Instancia y el mandato del Tribunal de Apelaciones sobre la incapacidad del recurrido Roberto González, todo ello por existir un Poder Duradero que no atiende los reclamos de la peticionaria sobre la participación de este en el descubrimiento de prueba circunstancia esencial del descubrimiento de prueba según los asuntos planteados y reconocidos por el Tribunal de Apelaciones los cuales son finales.*

El **20 de febrero de 2024**, la parte recurrida presentó su *Oposición a la Expedición del Auto de Certiorari.*

Con el beneficio de la comparecencia de las partes, procedemos a exponer la normativa jurídica aplicable al caso de autos.

**-II-**

**A.**

Sabido es que el auto de *certiorari* constituye *"un vehículo procesal discrecional que permite a un tribunal de mayor jerarquía revisar las determinaciones de un tribunal inferior".*[20] Por discreción se entiende el *"tener poder para decidir en una forma u otra, esto es, para escoger entre uno o varios cursos de acción".*[21] En ese sentido, la Regla 52.1 de Procedimiento Civil, delimita las instancias en que este foro habrá de atender y revisar mediante este recurso las resoluciones y órdenes emitidas por los tribunales de primera instancia, a saber:

> *[e]l recurso de certiorari para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación*

---

[20] *IG Builders et al. v. BBVAPR*, 185 DPR 307, 337-338 (2012); *Pueblo v. Díaz de León*, 176 DPR 913, 917 (2009).
[21] *García v. Asociación*, 165 DPR 311, 321 (2005).

*constituiría un fracaso irremediable de la justicia. Al denegar la expedición de un recurso de certiorari en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión.*

*Cualquier otra resolución u orden interlocutoria expedida por el Tribunal de Primera Instancia podrá ser revisada en el recurso de apelación que se interponga contra la sentencia sujeto a lo dispuesto en la Regla 50 sobre los errores no perjudiciales.*[22]

Con el fin de que podamos ejercer de una manera sabia nuestra facultad discrecional de entender o no en los méritos de los asuntos que son planteados mediante este recurso, nuestros oficios se encuentran enmarcados, a su vez, en la Regla 40 del Reglamento del Tribunal de Apelaciones.[23] Esta Regla 40 adquiere mayor relevancia en situaciones en las que, de ordinario, no están disponibles otros métodos alternos para la revisión de determinaciones judiciales y así evitar un fracaso de la justicia.[24] Por lo cual, debemos tomar en consideración los siguientes criterios que dicha Regla 40 establece; a saber:

*(A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.*
*(B) Si la situación de hechos planteada es la más indicada para el análisis del problema.*
*(C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.*
*(D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.*
*(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.*
*(F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.*
*(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.*

**B.**

En cuanto a los mecanismos para llevar a cabo el descubrimiento de prueba se ha establecido que deben realizarse de forma amplia y liberal.[25] Lo anterior tiene como propósito facilitar

---

[22] 32 LPRA Ap. V, R. 52.1.
[23] 4 LPRA Ap. XXII-B, R. 40
[24] *IG Builders et al. v. BBVAPR*, supra, pág. 339.
[25] Véase, *Rivera y Otros v. Banco Popular,* 152 DPR 140 (2000); *Alvarado v. Alemany*; 157 DPR 672 (2002).

la tramitación de pleitos, evitando, al mismo tiempo, que se cometan injusticias cuando las partes desconocen sobre situaciones pertinentes a las controversias.[26]

Como principio básico, *"las partes tienen derecho a descubrir toda la información relacionada con su caso, independientemente de quién la posea."*[27] Por tanto, la Regla 23.1 de Procedimiento Civil dispone lo siguiente:

> *El alcance del descubrimiento de prueba, a menos que sea limitado de algún modo por el tribunal, en conformidad con las disposiciones de estas reglas, será como sigue:*
>
> *(a) En general. Las partes podrán hacer descubrimiento sobre cualquier materia, no privilegiada, que sea pertinente al asunto en controversia en el pleito pendiente, ya se refiera a la reclamación o defensa de cualquier otra parte, incluso la existencia, descripción, naturaleza, custodia, condición y localización de cualesquiera libros, información almacenada electrónicamente, documentos u otros objetos tangibles, y la identidad y dirección de personas que conozcan hechos pertinentes. No constituirá objeción el que la información solicitada sea inadmisible en el juicio, siempre que exista una probabilidad razonable de que dicha información conduzca al descubrimiento de evidencia admisible.*[28]

Por otro lado, solo se han señalado dos limitaciones al descubrimiento de prueba: (a) que la información objeto del descubrimiento no sea privilegiada, y (b), que la misma sea pertinente a la controversia.[29] A tono con lo anterior, para que una materia sea objeto de descubrimiento *"basta con que exista una posibilidad razonable de que tenga relación con el asunto en controversia."*[30]

Por su parte, se ha apuntalado la amplia discreción del TPI *"para proteger a las partes u a otras personas objeto del descubrimiento de hostigamiento, perturbación u opresión, así como de cualquier gasto o molestia indebida."*[31] Lo anterior responde a la obligación del foro primario *"de garantizar una solución justa, rápida*

---

[26] *Id.*
[27] *Rivera y Otros v. Banco Popular,* supra, pág. 152.
[28] 32 LPRA Ap. V, R. 23.1.
[29] Véase, *Rivera y Otros v. Banco Popular,* supra, pág. 153; *Alvarado v. Alemany,* supra, pág. 683; *General Electric v. Concessionaries,* Inc., supra, pág. 39.
[30] *General Electric v. Concessionaries,* Inc., 118 DPR 32, 41 (1986).
[31] 32 LPRA Ap. V, R. 23.2.

*y económica del caso, sin ventajas para ninguna de las partes."[32]*

Por consiguiente, no se interfiere con el foro primario en el ejercicio de sus facultades discrecionales *"excepto en aquellas situaciones en que se demuestre que este último (1) actuó con prejuicio o parcialidad, (2) incurrió en un craso abuso de discreción, o (3) se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo."[33]*

Ahora bien, de ocurrir alguna controversia en torno al descubrimiento, la Regla 34.1 dispone que:

> *Cuando surja una controversia en torno al descubrimiento de prueba, el tribunal sólo considerará las mociones que contengan una certificación de la parte promovente en la que indique al tribunal en forma particularizada que ha realizado esfuerzos razonables, con prontitud y de buena fe, para tratar de llegar a un acuerdo con el abogado de la parte adversa para resolver los asuntos que se plantean en la moción y que éstos han resultado infructuosos.[34]*

## c.

Nuestro ordenamiento procesal reconoce el examen físico y mental como un mecanismo útil de descubrimiento de prueba.[35] La Regla 32 de Procedimiento Civil regula el examen físico y mental de las personas que sean partes en el litigio. La misma dispone lo siguiente:

> *En un pleito en el cual el estado mental o físico, incluyendo el grupo sanguíneo o la estructura genética, de una parte o de una persona bajo su tutela, custodia o patria potestad esté en controversia, la sala ante la cual esté pendiente el pleito podrá ordenarle que se someta a un examen físico o mental por un o una profesional autorizado o autorizada por ley para efectuarlo o para que presente para examen a la persona que esté bajo su tutela, custodia o patria potestad. En los casos en que la parte formule alegaciones sobre su estado físico o mental, se entenderá que ha renunciado a su derecho a la intimidad sobre aquellos expedientes médicos o sicológicos relacionados con la controversia. La orden se podrá dictar a solicitud de parte, previa moción y notificación a la parte que haya de ser examinada y a todas las demás partes, y en ella se especificarán la fecha, la hora, el lugar, el modo, las condiciones y el alcance del examen, y el o la profesional, o los o las profesionales que habrán de hacerlo.[36]*

---

[32] *Rivera y Otros v. Banco Popular,* supra, en la pág. 154.
[33] *Id,* pág. 155.
[34] 32 LPRA Ap. V, R. 34.1.
[35] *Otero v. Delbrey,* 144 DPR 688, 699-700 (1998).
[36] 32 LPRA Ap. V, R. 32.1.

En esencia, esta Regla establece dos condiciones o límites sustantivos para que los tribunales de instancia puedan ordenar un examen físico o mental debidamente solicitado: (1) el examen debe referirse a *una parte* del pleito, y (2), tiene que *estar* en controversia el estado físico o mental de esa parte.[37] En cuanto a la segunda condición, nuestro máximo foro ha expresado que las meras alegaciones no bastan para que el tribunal ordene que una parte se someta a un examen mental o físico. El promovente tiene que demostrar que existe una *controversia legítima* sobre el estado físico o mental de la persona cuyo examen de solicita, ofreciendo datos y razonamientos que le permitan al foro *a quo* decidir si debe ordenar el examen. [38] Con la obligación de demostrar que existe una controversia legítima sobre el estado físico o mental de un parte, los tribunales se aseguran de que el promovente no utilice el mecanismo del examen físico o mental como un medio para hostigar a la otra parte.

Es menester resaltar que los tribunales no pueden ejercer de forma ligera su facultad para ordenar un examen físico o mental. Esto se debe a que la facultad de los tribunales es discrecional y solo deber ejercerse después de sopesar los efectos de esta intromisión personal. [39]

**-III-**

Acude ante nos la parte peticionaria y nos plantea la comisión de dos errores.

**En primer lugar**, señala que el TPI erró al dejar sin efecto su resolución, la resolución del TPI de Guaynabo y el mandato de esta Curia (KLCE202300475) mediante los cuales se ordenó una evaluación médica para determinar si el señor González Lago es o

---

[37] *Otero v. Delbrey*, supra.
[38] *Id*, pág. 701.
[39] *Id.*

no capaz de atender los asuntos relevantes a su causa de acción. **En segundo lugar**, indica que el TPI erró al aceptar el *Poder Duradero*, ya que este no resuelve la controversia en torno a la participación del señor González Lago en el descubrimiento de prueba. Tiene razón. Veamos.

Tal y como resolvimos en la *Resolución* del **31 de mayo de 2023**, en el caso núm. KLCE202300475, la naturaleza de las alegaciones hace necesario que se dilucide la capacidad mental del señor González Lago.

Nótese además, que tanto el *Poder Duradero* como la carta del Dr. Arturo A. Ortiz Padua, no concluyen que el recurrido sea una persona mentalmente incapaz. El propio Dr. Arturo A. Ortiz Padua expresó, que la carta *"[...] es para propósitos informativos solamente y <u>no</u> necesariamente consiste en una declaración de incapacidad ante un tribunal, bajo el juramento correspondiente y con un testimonio pericial detallado por quien suscribe esta carta".*[40]

Consideramos meritorio que el señor González Lago se someta a una evaluación médica para determinar —de una vez y por todas— si en efecto está incapacitado mentalmente para atender los asuntos de su causa de acción. Confirmar la Resolución recurrida sería limitar los mecanismos de descubrimiento de prueba de la parte peticionaria sin tener claro, si el recurrido está mentalmente incapacitado o no.

No vemos razón alguna por la cual el recurrido no pueda o no deba ser examinado. Sobre todo, cuando su propio neurólogo se ofreció a brindar declaración ante el tribunal.

Ha pasado demasiado tiempo y se le han brindado numerosas oportunidades al señor González Lago para cumplir con lo ordenado

---

[40] Véase, Apéndice de la Parte Peticionaria, pág. 118.

por el TPI en la *Resolución y Orden* emitida el **23 de enero de 2023**, y sostenida por esta Curia, en la *Resolución* del **31 de mayo de 2023**.

**-IV-**

Por los fundamentos que anteceden, expedimos el auto de *certiorari* solicitado y en consecuencia, **revocamos** la Resolución recurrida. Se devuelve el caso al TPI para que continúe con los procedimientos de conformidad con lo aquí resuelto.

Lo acordó el Tribunal y lo certifica la secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones