ESTADO LIBRE ASOCIADO DE PUERTO RICO
EN EL TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| NELSON MENDA; BRENDA LAZOFF; LA SOCIEDAD LEGAL DE BIENES GANANCIALES MENDA-LAZOFF; ME SALVE, INC.; ME SALVE RIO PIEDRAS, INC.; ME SALVE ISABELA, INC.; NS HOLDINGS CO., LLP; RETAIL EXCHANGE LLC; RETEX HOLDINGS, LLC.<br><br>Recurrido<br><br>v.<br><br>RICH, INTELISANO & KAT, LLP; ROSS INTELISANO;<br><br>Peticionarios<br><br>SENDER SHUB; ILEANA SHUB; LA SOCIEDAD LEGAL DE BIENES GANANCIALES SHUB-LAZOFF; FINANCIAL TRUST; UBS FINANCIAL SERVICES, INC.<br>Otros Codemandados | **KLCE202400647** | *CERTIORARI* procedente del Tribunal de Primera Instancia Sala Superior de San Juan<br><br>Civil Núm.: SJ2022CV05433<br><br>Sobre: Revocación de Resolución del 24 de julio de 2023, Notificada el 26 de julio de 2023. |

Panel integrado por su presidente, el Juez Candelaria Rosa[1], el juez Bonilla Ortiz y el juez Pagán Ocasio.

Bonilla Ortiz, Juez Ponente

**<u>SENTENCIA</u>**

En San Juan, Puerto Rico a 28 de junio de 2024.

Comparece ante este foro Ross Intelisano y Rich, Intelisano & Katz, LLP (en conjunto, INTELISANO o peticionarios) y solicitan que revisemos una *Resolución* emitida el 10 de mayo de 2024 por el Tribunal de Primera Instancia, Sala Superior de San Juan, y notificada el 13

---

[1] En virtud de la Orden Administrativa OATA-2023-159, se designa al Hon. Carlos I. Candelaria Rosa.

de mayo de 2024. Mediante el referido dictamen, el foro primario declaró *No Ha Lugar* la *Moción de Desestimación* presentada por INTELISANO bajo el fundamento de que las causas de acción de la Demanda no son arbitrables.

Por los fundamentos que se exponen a continuación, **DENEGAMOS** el recurso de *Certiorari* de epígrafe.

-I-

El 13 de julio de 2017, INTELICIANO y el señor Sender Shub suscribieron un *Acuerdo de Servicios Legales*[2] en el cual se establece una clausula de arbitraje que lee como sigue:

> **Arbitration.** Client and the Firm agree that in the event that a dispute should arise as to the Firm's fee for legal services, they will resolve the fee dispute by arbitration before an arbitral forum outside Part 137 of the Rules of the Chief Administrator of the Courts (22 NYCRR) and that the arbitration shall be governed by the rules and procedures of that forum. By signing this Agreement, the Firm and Client acknowledge that they have received and read the official written instructions and procedures for both Part 137 and the Local Program Rules and that Client has been advised: (1) that Client has the right to use the fee arbitration procedures of Part 137, and; (2) that Client is not required to arbitrate a fee dispute in an arbitral forum outside Part 137. By signing this Agreement, the Firm and Client agree to **waive their rights with regard to arbitration pursuant to Part 137, which includes the right to reject the award of the arbitrator(s) by commencing an action on the merits (trial de novo) in a court of law.** (Énfasis en el original)

El 5 de julio de 2018, el señor Sender Shub y el señor Nelson Menda suscribieron el *Agreement to Terminate Partnership* mediante el cual separaron sus negocios y bienes. Dicho acuerdo contiene unas clausulas que disponen los laudos o transacciones de las

---

[2] *Demanda*, anejo I, págs. 33-36 del apéndice de los peticionarios.

reclamaciones presentadas contra UBS Financial Services, Inc. (en adelante, UBS).[3]

El 8 de abril de 2019, en su capacidad representativa, INTELISANO presentó una *Demanda enmendada de arbitraje* contra UBS ante la Financial Industry Regulatory Authority, Inc. (en adelante, FINRA).[4]

Tras varios sucesos y pendiente la reclamación ante FINRA, el 14 diciembre de 2021, INTELISANO renunció a la representación legal del señor Nelson Menda.[5]

Así las cosas, el 20 de junio de 2022, el señor Nelson Menda presentó *Demanda* contra INTELISANO bajo las siguientes causas de acción: cobro de dinero, acción reivindicatoria, daños y perjuicios, incluyendo daños punitivos.[6] Allí, el señor Menda alegó que INTELISANO renunció injustificadamente a su representación legal, lo que le provocó daños y perjuicios. Por ello, solicitó el desembolso de $1,683,698.96, suma que obtuvo como resultado de la transacción de unas reclamaciones que ambos le hicieran UBS, respecto a cuentas que poseyeron en común conforme al *Agreement to Terminate Partnership*.

Luego de varios tramites procesales atendidos en los tres foros judiciales, el 27 de febrero de 2024, INTELISANO presentó una *Moción de Desestimación* en la cual alegó falta de jurisdicción debido a que las reclamaciones de la *Demanda* están sujetas a la Clausula de Arbitraje contenida en el *Acuerdo de Servicios Profesionales*.[7]

---

[3] *Demanda*, anejo I, págs. 26-31 del apéndice de los peticionarios.
[4] *Demanda*, anejo I, págs. 38-79 del apéndice de los peticionarios.
[5] *Demanda*, anejo I, pág. 110 del apéndice de los peticionarios.
[6] *Demanda*, anejo I, pág. 1-24 del apéndice de los peticionarios.
[7] *Moción de Desestimación*, anejo III, pág. 619-643 del apéndice de los peticionarios.

El 1 de abril de 2024, el señor Nelson Menda presentó su *Oposición a Moción de Desestimación* donde alegó que la Cláusula de Arbitraje contenida en el *Acuerdo de Servicios Profesionales* solo aplica para controversias relacionadas a honorarios de abogados.[8]

En consecuencia, el 2 de mayo de 2024, INTELISANO presentó una *Réplica a Oposición a Moción de Desestimación* en la cual sostiene que el lenguaje de la Cláusula de Arbitraje contenida en el *Acuerdo de Servicios Profesionales* deja claro que, cualquier disputa que surja de o se relacione a la representación del cliente, será sometida a arbitraje.[9]

Finalmente, el 8 de mayo de 2024, el Tribunal de Primera Instancia celebró una vista argumentativa sobre la solicitud de desestimación presentada por INTELISANO.[10] Así las cosas, el 10 de mayo de 2024, el foro primario emitió una *Resolución* mediante la cual declaró *No Ha Lugar* la *Moción de Desestimación* presentada por INTELISANO bajo el fundamento de que las causas de acción de la Demanda no son arbitrables.[11] Dicha *Resolución* fue notificada el 13 mayo de 2024.[12]

Inconformes, el 11 de junio de 2024, INTELISANO acudió ante nosotros mediante recurso de Certiorari levantando los siguientes señalamientos de error:

1. ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL DECLARAR SIN LUGAR LA MOCIÓN DE DESESTIMACIÓN AL CONCLUIR QUE, SEGÚN EL ACUERDO DE ARBITRAJE DEL CONTRATO DE SERVICIOS, CUALQUIER DISPUTA DE

---

[8] *Oposición a Moción de Desestimación*, anejo IV, pág. 662-675 del apéndice de los peticionarios.
[9] *Réplica a Oposición a Moción de Desestimación*, anejo V, pág. 676-702 del apéndice de los peticionarios.
[10] *Minuta*, anejo VIII, pág. 728-731 del apéndice de los peticionarios.
[11] *Resolución*, anejo VII, págs. 724-727 del apéndice de los peticionarios.
[12] Íd.

HONORARIOS ESTA REGULADA POR LA PARTE 137 DE LAS REGLAS DE ADMINISTRADOR DE LAS CORTES DE NUEVA YORK.

*2.* ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL DECLARAR SIN LUGAR LA MOCIÓN DE DESESTIMACIÓN AL CONCLUIR QUE LAS CONTROVERSIAS Y CAUSAS DE ACCIÓN NO SON ARBITRABLES.

En esa misma fecha, 11 de junio de 2024, INTELISANO presentó una *Moción Urgente en Auxilio de Jurisdicción* en la cual solicitó la paralización de los procedimientos ante el foro primario y los mecanismos de descubrimiento de prueba.

Sobre esto, el 11 de junio de 2024, emitimos una *Resolución* en la que concedimos cinco (5) días a los recurridos para presentar su oposición al recurso de epígrafe y a la Moción Urgente de Auxilio de Jurisdicción.

En consecuencia, los peticionarios presentaron una *Reconsideración de Resolución sobre Moción Urgente de Auxilio de Jurisdicción*, la cual declaramos *No Ha Lugar* mediante *Resolución*, el 12 de junio de 2024.

En cumplimiento de orden, 18 de junio de 2024, los recurridos presentaron su Alegato en Oposición a Petición de Certiorari y su *Oposición a Moción en Auxilio de Jurisdicción*.

Con el beneficio de la comparecencia escrita de ambas partes, damos por perfeccionado el presente recurso y procedemos a resolver.

-II-

A.

La Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, delimita las instancias en que el Tribunal de Apelaciones expedirá un recurso de *certiorari* para

revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia. Es decir, cuando "se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo." Regla 52.1 de Procedimiento Civil, *supra*.

Asimismo, dispone los supuestos en que este foro intermedio podrá revisarlas, con carácter discrecional y a manera de excepción, en las siguientes instancias:

> [C]uando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia.

Por su parte, la Regla 40 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 40, establece los criterios que este foro debe tomar en consideración al atender una solicitud de expedición de este recurso discrecional; a saber, si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho. Así también, debemos tomar en consideración si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por parte del foro primario.

También examinaremos si el asunto planteado exige consideración más detenida a la luz de los autos originales o de alegatos más elaborados, o si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración. Finalmente, debemos analizar si la expedición del auto solicitado evita un fracaso de la justicia. *Véase*, Regla 40 del Reglamento del Tribunal de Apelaciones, *supra*.

**B.**

Nuestro Tribunal Supremo ha sido enfático en que los foros revisores "no debemos intervenir con las determinaciones de los juzgadores de primera instancia, salvo que medie pasión, prejuicio, parcialidad o error manifiesto." *Rodríguez et al. v. Hospital et al.*, 186 DPR 889, 908-909 (2012); *Serrano Muñoz v. Auxilio Mutuo*, 171 DPR 717, 741 (2007); *Álvarez v. Rivera*, 165 DPR 1, 25 (2005). Sin embargo, es preciso reseñar que nuestro más Alto Foro también ha reconocido que "la tarea de determinar cuándo un tribunal ha abusado de su discreción no es una fácil." *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414, 434 (2013), citando a *Rivera y otros v. Bco. Popular*, 152 DPR 140, 155 (2000). A tales efectos, ha manifestado considerar "que el adecuado ejercicio de discreción judicial está estrechamente relacionado con el concepto de razonabilidad." *SLG Zapata-Rivera v. J.F. Montalvo*, supra, págs. 434-435.

Así, el Tribunal Supremo define el concepto de "discreción" como "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera". *IG Builders et al. v. BBVAPR*, 185 DPR 307, 338 (2012), citando a *Pueblo v. Rivera Santiago*, 176 DPR 559, 580 (2009), entre otros. De esa manera, la discreción se nutre de "un juicio racional apoyado en la razonabilidad y fundamentado en un sentido llano de justicia […]". *SLG Zapata-Rivera v. J.F. Montalvo*, supra, pág. 435, citando a *Santa Aponte v. Srio. del Senado*, 105 DPR 750, 770 (1977).

**III.**

Es preciso comenzar por destacar que la *Resolución* recurrida, a pesar de ser un dictamen interlocutorio, es

susceptible de revisión por parte de este foro, en virtud de la Regla 52.1 de Procedimiento Civil, *supra*.

En síntesis, el peticionario formuló dos señalamientos de error donde adujo que el Tribunal de Primera Instancia erró al declarar *No ha Lugar* la desestimación de *Demanda* por considerar que las causas acción no son arbitrables conforme a la Parte 137 de las Reglas de Administrador de las Cortes de Nueva York.

Sin embargo, luego de evaluar el recurso de epígrafe y revisar los documentos sometidos, a la luz de los criterios de nuestra Regla 40, *supra*, rechazamos ejercer nuestra jurisdicción revisora e intervenir con el criterio del foro primario para variar el dictamen recurrido.

Recalcamos que, según dicta la norma, los foros revisores reconocemos amplia discreción a los foros de primera instancia para determinar el modo en que manejan los casos ante su consideración. De este modo, es preciso subrayar que nuestro Tribunal Supremo ha sido enfático en que, como foros revisores, no debemos intervenir con las actuaciones de los foros primarios, en ausencia de que hayan actuado con prejuicio o parcialidad, o que hayan errado en la aplicación del derecho. Incluso, ha dispuesto que, en el caso de las actuaciones discrecionales, solo estaríamos en posición de intervenir para variar el dictamen, si el foro primario abusó de su discreción.

Como bien lo ha interpretado nuestro Tribunal Supremo, la discreción a la hora de actuar debe estar regida por su estrecha relación con el concepto de razonabilidad. Así las cosas, a base de un análisis cuidadoso de la totalidad del expediente apelativo, no

estamos en posición de concluir que la actuación recurrida fuese irrazonable, o contraria en derecho. Consecuentemente, tampoco podemos afirmar que dicha actuación fuese el resultado de abuso de discreción por parte del foro primario. Por tanto, procede denegar la expedición del auto discrecional solicitado.

## -IV-

Por los fundamentos antes expuestos, se **DENIEGA** el presente auto discrecional de *Certiorari.* En consecuencia, declaramos *No Ha Lugar* la *Moción Urgente en Auxilio de Jurisdicción* instada por la parte peticionaria.

Lo pronunció y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones