ESTADO LIBRE ASOCIADO DE PUERTO RICO
EN EL TRIBUNAL DE APELACIONES
PANEL V ESPECIAL

| | | |
|---|---|---|
| PUERTO RICO HORSE OWNERS ASSOCIATION, INC., por si y en representación de cado uno de sus socios<br><br>Peticionarios<br><br>v.<br><br>CONFEDERACIÓN HÍPICA DE PUERTO RICO, INC., por sí y en representación de cada uno de sus socios<br><br>Recurrida<br><br>CAMARERO RACE TRACK CORP.<br><br>Recurrida | **KLCE202400699** | *CERTIORARI* procedente del Tribunal de Primera Instancia Sala Superior de Carolina<br><br>Civil Núm.: CN2021CV00388<br><br>Sobre: Enriquecimiento Injusto; Daños y Perjuicios; Solicitud de Orden |

Panel integrado por su presidente, el Juez Hernández Sánchez, el Juez Bonilla Ortiz y la Jueza Mateu Meléndez.

Bonilla Ortiz, Juez Ponente

## RESOLUCIÓN

En San Juan, Puerto Rico a 20 de agosto de 2024.

Comparece Puerto Rico Horse Owners Association, Inc. (en adelante, PRHOA o peticionaria) y solicita que revisemos la *Orden* emitida el 19 de abril de 2024 por el Tribunal de Primera Instancia, Sala Superior de Carolina. Mediante la referida *Orden*, el foro primario denegó una solicitud para enmendar la demanda presentada por PRHOA.

Por los fundamentos que se exponen a continuación, **DENEGAMOS** expedir el recurso de *certiorari*.

### I.

El caso de epígrafe inició, el 26 de noviembre de 2021, cuando PRHOA presentó una *Demanda* sobre

enriquecimiento injusto, daños y perjuicios contra la Confederación Hípica de Puerto Rico (en adelante, Confederación) y Camarero Race Track Corp. (en adelante, Camarero).[1]

No obstante, el 20 de enero de 2022, PRHOA presentó su *Demanda Enmendada*[2] y acto seguido, el 21 de enero de 2022, presentó su *Segunda Demanda Enmendada*.[3]

Luego de varias solicitudes de desestimación y peticiones de *certiorari*, el 14 de septiembre de 2022, la Confederación presentó su *Contestación a la Segunda Demanda Enmendada, Reconvención y Demanda contra Coparte*.[4]

Posteriormente, tras un largo trámite procesal, Camarero presentó el 29 de enero de 2024 su *Contestación a Segunda Demanda Enmendada; Reconvención; y Demanda contra Coparte*.[5]

Así las cosas, el 9 de marzo de 2024, PRHOA presentó una *Moción Solicitando Permiso para Enmendar la Demanda.*[6] Mediante la cual alegó que advino en conocimiento de nueva prueba debido a las admisiones realizadas por Camarero en su *Contestación a la Segunda Demanda Enmendada.* En síntesis, el referido proyecto de enmienda buscaba añadir una nueva causa de acción a tenor con la Ley Núm. 77 de 25 de junio de 1964, según enmendada, conocida como *Ley Antimonopolística de Puerto Rico*, 10 LPRA sec. 257 *et al.* (en adelante, Ley Antimonopolística).

---

[1] Véase, entrada número 1 en el Sistema Unificado de Manejo y Administración de Casos (SUMAC).
[2] *Véase*, entrada número 3 en SUMAC.
[3] *Véase*, entrada número 6 en SUMAC.
[4] *Véase*, entrada número 94 en SUMAC.
[5] *Véase*, entrada número 188 en SUMAC.
[6] *Véase*, entrada número 204 en SUMAC.

Por su parte, el 16 de abril de 2024, Camarero presentó su *Oposición a Moción Solicitando Permiso para Enmendar la Demanda por Tercera vez*.[7] Mediante tal oposición, Camarero argumentó que se pretendía abrir una nueva litigación sobre asuntos que conocían o debían conocer previo a enmendar la Demanda en 3 ocasiones. De manera que, sostuvo que añadir una causa de acción por alegada violación a la Ley Antimonopolística cambiaria sustancialmente la naturaleza del pleito y conllevaría gastos significativos de litigio para todas las partes.

De igual manera, el 16 de abril de 2024, la Confederación presentó su *Moción en Oposición a que se Autorice la Tercera Demanda Enmendada*.[8] Expuso que PRHOA conocía la existencia del contrato desde el año 2013 y que habían transcurrido 11 años sin que se presentara una reclamación en su contra a base de la Ley Antimonopolística.

A esos efectos, el 19 de abril de 2024, el foro primario emitió y notificó una *Orden* mediante la cual denegó la solicitud para enmendar la demanda.[9] Específicamente, el foro primario dictaminó como sigue:

> Hemos revisado la solicitud para enmendar la demanda por tercera ocasión, así como los argumentos en oposición presentados por las partes codemandadas y determinamos NO permitir la enmienda solicitada.

En desacuerdo, el 3 de mayo de 2024, PRHOA presentó una *Moción de Reconsideración*.[10] En particular, PRHOA argumentó que la enmienda no altera sustancialmente el alcance del caso ni convierte la controversia inicial en tangencial, sino que añade unas causas de acción, a tenor

---

[7] *Véase*, entrada número 212 en SUMAC.
[8] *Véase*, entrada número 213 en SUMAC.
[9] *Véase*, entrada número 221 en SUMAC.
[10] *Véase*, entrada número 222 en SUMAC.

con la Ley Antimonopolística, que surgen de los hechos de la Demanda. Además, sostuvo que la enmienda no obligaba a las partes contrarias a incurrir en nuevos gastos de litigio ni a comenzar el descubrimiento de prueba.

Oportunamente, el 23 de mayo de 2024, Camarero presentó su *Oposición a Moción Solicitando Reconsideración* en la cual reiteró sus argumentos y añadió que no existía fundamento para justificar la demora de PRHOA en incluir la causa de acción.[11]

En esa misma fecha, 23 de mayo de 2024, la Confederación presentó su *Oposición a Moción de Reconsideración* mediante la cual reafirma los argumentos de Camarero.[12]

Así las cosas, el 28 de mayo de 2024, el foro primario emitió y notificó una *Orden* declarando *No Ha Lugar* la solicitud de reconsideración.[13]

Aun inconformes, el 26 de junio de 2024, PRHOA presentó el recurso que nos ocupa y señaló la comisión del siguiente error:

> Erró el TPI al no permitirle a PRHOA enmendar sus alegaciones conforme a la Moción Solicitando Enmiendas a la Demanda.

En consecuencia, el 8 de julio de 2024, la Confederación presentó su *Oposición a Petición de Certiorari*.

Tras la concesión de prórroga, el 22 de julio de 2024, Camarero presentó su *Oposición a Expedición de Certiorari*.

---

[11] *Véase*, entrada número 224 en SUMAC.
[12] *Véase*, entrada número 225 en SUMAC.
[13] *Véase*, entrada número 226 en SUMAC.

Con el beneficio de los escritos de las partes, damos el recurso por perfeccionados y procedemos a resolverlo.

## II.

### -A-

La Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, delimita las instancias en que el Tribunal de Apelaciones expedirá un recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia. Es decir, cuando "se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo." Regla 52.1 de Procedimiento Civil, *supra*.

Asimismo, dispone los supuestos en que este foro intermedio podrá revisarlas, con carácter discrecional y a manera de excepción, en las siguientes instancias:

> [C]uando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia.

Por su parte, la Regla 40 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 40, establece los criterios que este foro debe tomar en consideración al atender una solicitud de expedición de este recurso discrecional; a saber, si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho. Así también, debemos tomar en consideración si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por parte del foro primario.

También examinaremos si el asunto planteado exige consideración más detenida a la luz de los autos originales o de alegatos más elaborados, o si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración. Finalmente, debemos analizar si la expedición del auto solicitado evita un fracaso de la justicia. *Véase*, Regla 40 del Reglamento del Tribunal de Apelaciones, *supra*.

**-B-**

Nuestro Tribunal Supremo ha sido enfático en que los foros revisores "no debemos intervenir con las determinaciones de los juzgadores de primera instancia, salvo que medie pasión, prejuicio, parcialidad o error manifiesto." *Rodríguez et al. v. Hospital et al.*, 186 DPR 889, 908-909 (2012); *Serrano Muñoz v. Auxilio Mutuo*, 171 DPR 717, 741 (2007); *Álvarez v. Rivera*, 165 DPR 1, 25 (2005). Sin embargo, es preciso reseñar que nuestro más Alto Foro también ha reconocido que "la tarea de determinar cuándo un tribunal ha abusado de su discreción no es una fácil." *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414, 434 (2013), citando a *Rivera y otros v. Bco. Popular*, 152 DPR 140, 155 (2000). A tales efectos, ha manifestado considerar "que el adecuado ejercicio de discreción judicial está estrechamente relacionado con el concepto de razonabilidad." *SLG Zapata-Rivera v. J.F. Montalvo*, supra, págs. 434-435.

Así, el Tribunal Supremo define el concepto de "discreción" como "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera". *IG Builders et al. v. BBVAPR*, 185 DPR 307, 338 (2012), citando a *Pueblo v. Rivera Santiago*, 176 DPR 559, 580 (2009), entre otros. De esa manera, la

discreción se nutre de "un juicio racional apoyado en la razonabilidad y fundamentado en un sentido llano de justicia […]". *SLG Zapata-Rivera v. J.F. Montalvo*, supra, pág. 435, citando a *Santa Aponte v. Srio. del Senado*, 105 DPR 750, 770 (1977).

**III.**

Es preciso comenzar por destacar que la *Orden* recurrida, a pesar de ser un dictamen interlocutorio, es susceptible de revisión por parte de este foro, en virtud de la Regla 52.1 de Procedimiento Civil, *supra*.

En síntesis, la peticionaria señaló que el Tribunal de Primera Instancia erró al denegar la solicitud para enmendar la *Demanda* por tercera ocasión.

Sin embargo, luego de evaluar el recurso de epígrafe y revisar los documentos sometidos, a la luz de los criterios de nuestra Regla 40, *supra*, rechazamos ejercer nuestra jurisdicción revisora e intervenir con el criterio del foro primario para variar el dictamen recurrido.

Recalcamos que, nuestro Tribunal Supremo ha sido enfático en que, como foros revisores, no debemos intervenir con las actuaciones de los foros primarios, en ausencia de que hayan actuado con prejuicio o parcialidad, o que hayan errado en la aplicación del derecho. Incluso, ha dispuesto que, en el caso de las actuaciones discrecionales, solo estaríamos en posición de intervenir para variar el dictamen, si el foro primario abusó de su discreción.

Así las cosas, a base de un análisis cuidadoso de la totalidad del expediente apelativo, no estamos en posición de concluir que la actuación recurrida fuese irrazonable, o contraria en derecho. Consecuentemente,

tampoco podemos afirmar que dicha actuación fuese el resultado de abuso de discreción por parte del foro primario. Por tanto, procede denegar la expedición del auto discrecional solicitado.

**IV.**

Por los fundamentos antes expuestos, **DENEGAMOS** el presente auto discrecional de *certiorari*.

Lo pronunció y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones