ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL III

| | | |
|---|---|---|
| JOSÉ ENRIQUE FERNÁNDEZ BJERG<br><br>Recurrido<br><br><br>V.<br><br><br>MARY JANE RICHARDS BERRÍOS<br><br>Peticionaria | KLCE202500021 | *CERTIORARI* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br>_____<br>Caso Civil: SJ2024RF01054<br>_____<br>SOBRE:<br>DIVORCIO (R.I.) |

Panel integrado por su presidente el Juez Figueroa Cabán, el Juez Salgado Schwarz y el Juez Monge Gómez.

Salgado Schwarz, Carlos G., Juez Ponente.

## S E N T E N C I A

En San Juan, Puerto Rico, a 6 de febrero de 2025.

Comparece ante nos la señora Mary Jane Richards Berríos ("Sra. Richards" o "Peticionaria"), quien nos solicita que revoquemos la Resolución emitida el 19 de diciembre de 2024[1] por el Tribunal de Primera Instancia, Sala Superior de San Juan ("foro primario" o "foro recurrido"). En dicha Resolución, el foro primario declaró *No Ha Lugar* la solicitud de paralización del procedimiento de divorcio presentada por la Peticionaria.

Por los fundamentos que exponemos a continuación, se expide el auto de *certiorari*, se **revoca** la determinación recurrida y se devuelve el caso al foro primario para los trámites ulteriores conforme a lo aquí expresado.

_____
[1] Notificada el 20 de diciembre de 2024.

Número Identificador

SEN2025_____

-I-

A continuación, exponemos los hechos pertinentes a la controversia de autos. El 9 de agosto de 2024, el señor José Enrique Fernández Bjerg ("Sr. Fernández" o "Recurrido") presentó una *Demanda[2]* de divorcio contra la Peticionaria por la causal de ruptura irreparable. Cabe señalar que, previo a la presentación de la Demanda, el 13 de febrero de 2024, la Sra. Richards y sus hijos, presentaron una *Petición Jurada[3]* a fin de comenzar un proceso de incapacidad a favor del Recurrido. El 26 de noviembre de 2024, la Sra. Richards presentó una *Reconsideración sobre Anotación de Rebeldía por Falta de Notificación y Solicitud de Paralización[4]*. En esa ocasión, la Peticionaria solicitó que se levantara la anotación de rebeldía en su contra y se paralizara el pleito de divorcio. Posteriormente, el 11 de diciembre de 2024, el Recurrido presentó su *Oposición a Reconsideración sobre Anotación de Rebeldía por Falta de Notificación y Solicitud de Paralización[5]*. En síntesis, el Sr. Fernández alegó que, conforme al derecho vigente, se presume su capacidad y esta no puede ser cuestionada sin una sentencia firme de incapacidad. Además, sostuvo que paralizar el procedimiento de divorcio vulnera sus derechos fundamentales y restringe su autonomía.[6]

Luego de varios incidentes procesales, el 20 de diciembre de 2024, el foro primario emitió una *Resolución[7]* declarando *No Ha Lugar* la solicitud de paralización. Así las cosas, el 7 de enero de 2025, la

---

[2] Véase Apéndice del recurso de *certiorari,* págs. 1-2.
[3] Véase Entrada 1 del Sistema Unificado de Manejo y Administración de Casos (SUMAC) del caso SJ2024RF00221.
[4] Véase Apéndice del recurso de *certiorari,* págs. 7-13.
[5] Véase Apéndice del recurso de *certiorari*, págs. 22-28.
[6] Véase Apéndice del recurso de *certiorari*, pág. 27.
[7] Véase Apéndice del recurso de *certiorari,* págs. 131-134.

Peticionaria presentó su *Contestación a Demanda*[8]. En dicha alegación responsiva, la Sra. Richards reiteró la presunta condición incapacitante del Recurrido y solicitó la desestimación de la Demanda. El 8 de enero de 2025, la Peticionaria presentó una *Solicitud Urgente para que se Emitan Medidas Cautelares y se Señale Vista al Amparo de la Regla 56 de las de Procedimiento Civil*[9]. Así, el 9 de enero de 2025, el foro recurrido emitió una *Orden*[10] señalando que tiene pleno conocimiento del estado de los procedimientos en el caso donde se solicitó la declaración de incapacidad del Sr. Fernández. Además, destacó que en nuestro ordenamiento jurídico se permite que un incapaz pueda divorciarse siempre y cuando entienda la naturaleza de la acción y pueda colaborar con su representación legal. Ahora bien, el foro primario enfatizó que el Recurrido no ha sido declarado incapaz, sin embargo, debido a que su capacidad está siendo cuestionada, solicitará que se establezca, mediante preguntas, que el Sr. Fernández entiende la naturaleza del proceso de divorcio y puede colaborar con su representación legal. Inconforme con dicha determinación, ese mismo día, la Sra. Richards presentó un recurso de *certiorari* ante este Tribunal e hizo el siguiente señalamiento de error:

> **ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL DAR TRÁMITE ORDINARIO A UNA DEMANDA DE DIVORCIO A PESAR DE QUE LA CAPACIDAD PARA OBRAR DEL DEMANDANTE ESTÁ EN ENTREDICHO.**

El 21 de enero de 2025, el Recurrido presentó su *Oposición a la Expedición del Auto de Certiorari*. En síntesis, alega que el foro primario no actuó de forma

---

[8] Véase Apéndice del recurso de *certiorari*, págs. 135-214.
[9] Véase Apéndice del recurso de *certiorari*, págs. 217-228.
[10] Véase Apéndice del recurso de *certiorari*, págs. 229-231.

arbitraria, ni cometió un craso abuso de discreción que requiera la intervención del foro apelativo con la determinación impugnada.

-II-

**A. Certiorari**

El auto de *certiorari* es un remedio procesal discrecional que permite a un tribunal de mayor jerarquía revisar las determinaciones de un tribunal inferior.[11]

Mediante la Regla 52.1 de Procedimiento Civil de 2009[12], se hizo un cambio trascendental respecto a la jurisdicción del Tribunal Apelativo para revisar los dictámenes interlocutorios del foro de instancia mediante recurso de *certiorari*. A tales efectos, la Regla 52.1 de Procedimiento Civil, *supra*, dispone, en parte pertinente, lo siguiente:

> El recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Al denegar la expedición de un recurso de *certiorari* en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión.
>
> Cualquier otra resolución u orden interlocutoria expedida por el Tribunal de

---

[11] *Pueblo v. Díaz de León*, 176 DPR 913, 917 (2009).
[12] 32 LPRA Ap. V, R. 52.1.

Primera Instancia podrá ser revisada en el recurso de apelación que se interponga contra la sentencia sujeto a lo dispuesto en la Regla 50 sobre los errores no perjudiciales.

Por tanto, el asunto IG planteado en el recurso instado por el promovente debe tener cabida bajo alguno de los incisos de la Regla 52.1, *supra*, pues el mandato de la referida regla establece taxativamente que "*solamente será expedido*" el auto de *certiorari* para la revisión de remedios provisionales, interdictos, denegatoria de una moción de carácter dispositivo, admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciaros, anotaciones de rebeldía, en casos de relaciones de familia, aquellos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia.[13]

Así las cosas, el primer examen que debe pasar todo recurso de *certiorari* para ser expedido es que tenga cabida bajo alguno de los incisos de la Regla 52.1 de Procedimiento Civil.

Superada esta primera etapa, procede hacer nuestro examen tradicional caracterizado por la discreción encomendada al tribunal revisor para autorizar su expedición y adjudicar sus méritos. A pesar de ser un asunto discrecional, la Regla 40 del Reglamento del Tribunal de Apelaciones esboza los siete criterios que

---

[13] La Ley Núm. 177 del 30 de noviembre de 2010 "extendió la facultad de presentar recursos de *certiorari* para revisar también aquellas órdenes o resoluciones interlocutorias dictadas por el foro primario que involucren asuntos de interés público o que presenten situaciones que demanden la atención inmediata del foro revisor, pues aguardar hasta la conclusión del caso conllevaría un 'fracaso irremediable de la justicia'" *IG Builders, et al. v. BBVAPR*, 185 DPR 307 (2012).

el tribunal tomará en consideración al determinar la expedición de un auto de *certiorari*. Estos son:

A. Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

B. Si la situación de hechos planteada es la más indicada para el análisis del problema.

C. Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

D. Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

E. Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

F. Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

G. Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.[14]

Sólo podremos intervenir con el ejercicio de la discreción en aquellas situaciones en que se demuestre que el foro recurrido: (1) actuó con prejuicio o parcialidad; (2) incurrió en un craso abuso de discreción; o (3) se equivocó en interpretar o aplicar cualquier norma procesal o de derecho sustantivo.[15] Aun cuando determinar si un tribunal ha abusado de su discreción no es tarea fácil ello ciertamente está relacionado de forma estrecha con el concepto de razonabilidad.[16]

---

[14] Véase Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 40.
[15] *Rivera Durán v. Bco. Popular*, 152 DPR 140, 155 (2000).
[16] *Íd.*

### B. Divorcio y Tutela – Código Civil de 2020[17]

El Artículo 425 del nuevo Código Civil establece lo siguiente:

> El divorcio puede solicitarse al tribunal mediante la presentación de:
> (a)  una petición conjunta de divorcio por consentimiento.
> (b)  una petición conjunta de divorcio por ruptura irreparable de los nexos de convivencia matrimonial.
> (c)  una petición individual de divorcio por ruptura irreparable de los nexos de convivencia matrimonial.
>
> Toda petición de divorcio debe suscribirse bajo juramento por ambos cónyuges si es conjunta o por la parte peticionaria si es individual.[18]

Ahora bien, cuando nos encontramos ante una petición de divorcio incoada por una persona incapaz, el Artículo 441 dispone lo siguiente:

> La persona declarada incapaz mediante sentencia puede incoar la acción de disolución de su matrimonio por la muerte presunta de su cónyuge o por divorcio, si al momento de la presentación entiende la naturaleza de la acción y puede colaborar con su representante en el proceso.
>
> Al presentar la petición y durante el proceso de divorcio del incapaz se requiere la intervención del tutor.[19]

Cabe señalar que, en estas circunstancias, el tribunal decretará la disolución del matrimonio si redunda en beneficio de la persona y del patrimonio del incapaz.[20] Por otro lado, respecto a las actuaciones que requieren autorización judicial, el Artículo 165 del Código Civil dispone, en parte pertinente, lo siguiente:

> El tutor necesita autorización judicial previa y expresa para:
> (a)  […]
>
> […]

---

[17] 31 LPRA § 5311, et. seq.
[18] 31 LPRA § 6772.
[19] 31 LPRA § 6788.
[20] 31 LPRA § 6790.

(j) para entablar demandas en nombre de los sujetos a tutela y para sostener los recursos de apelación o cualquiera otro que sea legal contra la sentencia en que hayan sido condenados.
El tutor presentará prueba de la necesidad, la utilidad y la conveniencia del acto para la persona o el patrimonio del tutelado.[21]

-III-

Según el marco fáctico antes esbozado, vemos que la Peticionaria y sus hijos solicitaron la declaración de incapacidad del Recurrido previo a la presentación de la Demanda de divorcio en el caso de epígrafe.

Es harto conocido que la capacidad se presume. Ahora bien, existen circunstancias que ameritan un mayor grado de cuidado, ya que su resultado puede lesionar derechos fundamentales. En su Resolución, el foro primario señala que el Artículo 441 del nuevo Código Civil *"permite que una persona declarada incapaz presente una demanda de divorcio, siempre y cuando al momento de la presentación entienda la naturaleza de la acción y pueda colaborar con su representante legal"*[22]. Cabe señalar que dicha postura fue reafirmada por el foro primario mediante Orden emitida el 9 de enero de 2025. No le asiste la razón.

Debemos aclarar que, si bien una persona incapaz puede presentar una demanda de divorcio, el propio artículo 441 dispone que tanto al momento de la presentación de la petición como durante el proceso de divorcio se <u>requiere</u> la intervención del tutor. Es decir, sin la intervención del tutor el trámite de divorcio no surte efecto jurídico alguno.

---

[21] 31 LPRA § 5730.
[22] Véase Apéndice del recurso de *certiorari*, pág. 2.

La Honorable Leilani Torres Roca, quien preside ambos casos cuyas controversias nos ocupan, procura culminar el proceso de divorcio previo a la determinación en el caso de incapacidad. Tal proceder nos parece incorrecto. La Peticionaria y sus hijos presentaron un pleito a fin de que se determine la capacidad, o falta de esta, del Sr. Fernández. Su solicitud se basa en diversas opiniones médicas, las cuales el foro primario tendrá que evaluar en su momento. Debemos tener presente que uno de los posibles escenarios que pueden surgir de ese pleito, es la determinación de incapacidad del Recurrido, lo que a su vez resulta en el nombramiento de un tutor. De ser así, el pleito de divorcio se tiene que llevar a cabo con la intervención de dicho tutor, tal y como dispone nuestro ordenamiento jurídico. Lo contrario equivale a la nulidad del proceso de divorcio. Por lo tanto, ante la incertidumbre de lo que pueda ocurrir en el pleito de incapacidad, le corresponde al foro primario culminar dicho pleito y, posteriormente, atender el asunto del divorcio, de forma tal que se garanticen los derechos de las partes.

-IV-

Por los fundamentos que anteceden, se expide el auto de *certiorari*, se **revoca** la determinación recurrida y se devuelve el caso al foro primario para que actúe de conformidad con nuestra decisión.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

*Lcda. Lilia M. Oquendo Solís*
*Secretaria del Tribunal de Apelaciones*