ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| BANCO POPULAR DE PUERTO RICO COMO AGENTE DE SERVICIO DE MASSACHUSETTS MUTUAL LIFE INSURANCE COMPANY<br><br>Peticionario<br><br>v.<br><br>SUCESIÓN DE ORLANDO ANTONIO MIRANDA, ET ALS<br><br>Recurridos | TA2025CE00807 | *Certiorari,* procedente del Tribunal de Primera Instancia Sala Superior de Caguas<br><br>Caso Núm.: ECD2012-1291<br><br>Sobre: Ejecución de Hipoteca *In Rem* |

Panel integrado por su presidenta, la Juez Brignoni Mártir, la Jueza Álvarez Esnard y la Jueza Prats Palerm.

Prats Palerm Jueza, Ponente

## SENTENCIA

En San Juan, Puerto Rico, a 4 de marzo de 2026.

Comparece el Banco Popular de Puerto Rico ("BPPR" o "Peticionario") mediante *Petición de Certiorari* y nos solicita la revisión de una *Orden* emitida el 17 de octubre de 2025 y notificada el 23 de octubre de 2025, por el Tribunal de Primera Instancia, Sala Superior de Caguas ("TPI"). En virtud del aludido dictamen, tras una venta en pública subasta, producto de una sentencia de ejecución de hipoteca, el TPI autorizó el retiro de fondos por una cantidad menor a la adeudada.

Por los fundamentos que proceden, se *expide* el auto de *certiorari* solicitado y se *revoca* la determinación recurrida.

## I.

El caso de epígrafe tuvo su génesis procesal el 15 de octubre de 2012, cuando el BPPR presentó una *Demanda* sobre ejecución de hipoteca *in rem* en contra de Orlando Antonio Miranda Rolón, así como Orlando Miranda Cotto, su esposa, Sandra Ivelisse Cotto Sanabria, y la Sociedad Legal de Gananciales compuesta por ambos (en conjunto, ("Recurridos"). Posteriormente, el 16 de noviembre de 2012, el BPPR radicó una *Demanda Enmendada*, a los únicos efectos de incluir a los herederos de Orlando Miranda Cotto.

Tras varios trámites procesales, el 13 de octubre de 2016, el foro de instancia emitió una *Sentencia Sumaria* en virtud de la cual declaró Ha Lugar la *Demanda Enmendada*. Consecuentemente, le ordenó a los recurridos el pago de: (1) $31,822.36, por concepto del principal, más intereses a razón de 7.5% anual que continuaban acumulándose mensualmente hasta el saldo total de la deuda; (2) $956.44, por concepto de cargos por mora, los cuales también continuaban acumulándose mensualmente hasta el saldo total de la deuda; y (3) $4,703.50, por concepto de honorarios de abogado. En caso de no poder satisfacer la deuda, el TPI ordenó la venta del inmueble en pública subasta.

Ante el incumplimiento con el pago de lo adeudado, el 17 de agosto de 2023, notificada el 13 de septiembre de 2023, el foro de instancia dictó una *Orden sobre Ejecución de Sentencia y Venta de Bienes*. Consecuentemente, el 1 de noviembre de 2023, el inmueble fue vendido en pública subasta.

El 8 de noviembre de 2023, el peticionario presentó una *Moción Solicitando Retiro de Fondos*. Señaló que la finca fue subastada por la cantidad de $94,800.00. Por tanto, solicitó la expedición de un cheque por la totalidad de lo adeudado por los recurridos, la suma de $92,600.09.

El 14 de noviembre de 2023, notificada el 16 de noviembre de 2023, el foro de instancia dictó una *Orden* mediante la cual autorizó el retiro de $52,001.72, más los intereses generados mientras estuvieron depositados en el Tribunal. Inconforme, el 27 de diciembre de 2023, el BPPR radicó una *Urgente Moción en Solicitud de Enmienda Nunc Pro Tunc y para el Desembolso de Fondos*. Manifestó que la suma autorizada por el foro de instancia no cubría la totalidad de la deuda. Como resultado, solicitó el desembolso de $41,570.31 adicionales, correspondientes a la cuantía aún debida. Para sustentar su reclamo, presentó el desglose de las partidas adeudadas.

Ante la inacción del TPI, el 7 de marzo de 2024, el BPPR presentó una *Urgente Moción en Solicitud de Remedios y para el Desembolso de Fondos Consignados*. Nuevamente, el 1 de agosto de 2024, el peticionario se vio obligado a radicar una *Moción Urgente en Solicitud de Orden*. Así, también, el 30 de agosto

de 2024, instó una *Cuarta Moción Urgente en Solicitud de Orden para Retiro de Fondos.*

Debido a la falta de respuesta del foro de instancia, el 10 de octubre de 2024, el BPPR acudió ante esta Curia mediante recurso de *mandamus,* clasificado alfanuméricamente como KLRX202400015. Examinado el recurso, el 16 de diciembre de 2024, este Panel expidió el *mandamus* solicitado. Como consecuencia, le ordenamos al Hon. Elías Sánchez Fernández a cumplir con su deber ministerial de resolver las mociones presentadas por el BPPR.

Así dispuesto, el 23 de diciembre de 2024, notificadas el 26 de septiembre de 2025, el TPI denegó las cuatro (4) mociones instadas por el BPPR para el retiro de los fondos remanentes, mediante órdenes en las cuales dispuso "Sin Lugar". Insatisfecho, el 9 de octubre de 2025, el peticionario presentó una *Moción en Solicitud de Reconsideración.* El 17 de octubre de 2025, notificada el 23 de octubre de 2025, el foro de instancia dictaminó una *Orden* en virtud de la cual denegó la solicitud de reconsideración instada por el BPPR.

Inconforme aún, el 24 de noviembre de 2025, el BPPR acudió ante nos mediante una *Petición de Certiorari.* La parte peticionaria realizó el siguiente señalamiento de error:

> **Erró el Tribunal de Primera instancia al denegar implícitamente las mociones de reconsideración de Banco Popular y al reducir arbitrariamente la cantidad de retiro de $92,600.09 a $52,001.72 sin justificación matemática alguna, violando la doctrina de "Ley del Caso" y el derecho fundamental al debido proceso de ley.**

El 5 de diciembre de 2025, este Tribunal emitió una *Resolución* mediante la cual le concedimos a la parte recurrida un término de diez (10) días para presentar su alegato en oposición. Transcurrido el plazo otorgado, damos por perfeccionado el recurso y procedemos a resolver.

## II.

### -A-

El auto de *certiorari* es un vehículo procesal que permite a un tribunal de mayor jerarquía revisar las determinaciones de un tribunal inferior. En esencia, se trata de un recurso extraordinario mediante el cual se solicita al tribunal de

superior jerarquía la corrección de un error cometido por el tribunal inferior. *Rivera et als. v. Arcos Dorados,* 212 DPR 124 (2023); *800 Ponce de León Corp. v. American International Insurance,* 205 DPR 163 (2020); *Medina Nazario v. McNeil Healthcare, LLC,* 194 DPR 723, 728-729 (2016); véase, además, Art. 670 del Código de Enjuiciamiento Civil, 32 LPRA sec. 3491. Por tanto, la expedición del auto de *certiorari* descansa en la sana discreción del tribunal revisor. *Íd.; IG Builders et al v. BBVAPR,* 185 DPR 307, 337-338 (2012).

La Regla 40 del Reglamento del Tribunal de Apelaciones establece los criterios que este foro tomará en consideración para ejercer prudentemente su discreción para expedir o no un recurso de *certiorari,* a saber:

A. Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos son contrarios a derecho.
B. Si la situación de hechos planteada es la más indicada para analizar el problema.
C. Si ha mediado prejuicio, parcialidad, o error craso y manifiesto de la apreciación de la prueba por el Tribunal de Primera Instancia.
D. Si el asunto planteado exige consideración, más detenida a la luz de los autos originales, por los cuales deberán ser elevados, o de alegatos más elaborados.
E. Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
F. Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
G. Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia. Regla 40 del Reglamento del Tribunal de Apelaciones, según enmendada, *In re Aprob. Enmdas. Reglamento TA,* 2025 TSPR 42, págs. 59-60, 215 DPR __ (2025).

De otra parte, este Tribunal solo intervendrá con las determinaciones discrecionales del Tribunal de Primera Instancia, cuando se demuestre que hubo un craso abuso de discreción, prejuicio, parcialidad o error manifiesto. *Trans-Oceanic Life Ins. v. Oracle Corp.,* 184 DPR 689, 709 (2012), citando a *Lluch v. España Service Sta.,* 117 DPR 729, 745 (1986). En el ámbito jurídico la discreción ha sido definida como una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera. *SLG Zapata-Rivera v. J.F. Montalvo,* 189 DPR 414, 434-435 (2013). La discreción se nutre de un juicio racional apoyado en la razonabilidad y fundamentado en un sentido llano de justicia. *Íd.* Por lo anterior, un adecuado ejercicio de discreción judicial está estrechamente relacionado con el concepto de razonabilidad. *Umpierre*

*Matos v. Juelle Albello,* 203 DPR 254, 275 (2019); *Rivera y otros v. Bco. Popular,* 152 DPR 140, 155 (2000).

**-B-**

La *Ley del Registro de la Propiedad Inmobiliaria del Estado Libre Asociado de Puerto Rico,* Ley Núm. 210-2015, según enmendada, 30 LPRA sec. 6001 *et seq.* ("Ley 210-2015"), regula el procedimiento para la ejecución de hipotecas. En lo aquí pertinente, el referido estatuto establece que:

> Los acreedores hipotecarios posteriores y los titulares de derechos reconocidos en sentencias finales y firmes debidamente anotados o asegurados mediante embargo al crédito que se ejecuta, podrán radicar dentro del procedimiento de ejecución una moción juramentada estableciendo la cuantía del crédito que se les adeuda. Art. 98 de la Ley 210-2015, 30 LPRA sec. 6135.

Asimismo, el Art. 99 de la Ley 210-2015, 30 LPRA sec. 6136, indica que:

> Una vez se declare con lugar la demanda y advenga final y firme la sentencia dictada en el procedimiento de ejecución de hipoteca, el tribunal ordenará, a instancia del ejecutante, la expedición del correspondiente mandamiento, para que el alguacil proceda a la subasta de los bienes hipotecados.

Celebrada la venta en pública subasta, el Art. 108 de la Ley Núm. 210 de 8 de diciembre de 2015, según enmendada, conocida como "*Ley de la Propiedad Inmobiliaria del Estado Libre Asociado de Puerto Rico*" ("Ley 210-2015"), 30 LPRA sec. 6145, establece que:

> Si se confirma la venta, **el precio de venta se destinará, sin dilación, al pago del crédito hipotecario del acreedor**. El sobrante lo depositará el alguacil en la secretaría del tribunal para que éste disponga lo que proceda respecto a los acreedores posteriores siguiendo el orden o rango que cada uno tenga en relación con el crédito ejecutado.

(Énfasis suplido)

En el caso del remanente, si alguno y si no existiera crédito o responsabilidad posterior, se entregará al deudor o al tercer poseedor. *Íd.*

**III.**

En el recurso que nos ocupa, el peticionario nos solicita que revisemos la determinación emitida por el TPI mediante la cual se negó a autorizar el desembolso de la suma adeudada por los recurridos. Precisa que incidió al reducir arbitrariamente la cantidad adeudada, de $92,600.09 a $52,001.72, sin justificación matemática alguna. Como resultado, arguyen que el foro de

instancia violó la doctrina de la ley del caso, así como su derecho a un debido proceso de ley.

Conforme surge de la *Sentencia Sumaria* dictada en el año 2016, la parte recurrida adeudaba las siguientes sumas: $31,822, por concepto de principal; intereses a razón de 7.5% anual, **los cuales se acumularon mensualmente hasta el saldo total de la deuda**; $956.44, por concepto de cargos por mora, **los cuales continuaban acumulándose hasta el saldo de la deuda**; más la suma de $4,703.50, por concepto de honorarios de abogado. Se desprende de la certificación presentada por el BPPR que, al momento de la venta en pública subasta, la parte recurrida adeudaba la cantidad de $92,600.09, debido a los cargos e intereses que continuaron acumulándose.

No obstante, sin justificación en ley, el TPI únicamente autorizó el retiro de $52,001.72, resultando así en una diferencia de $40,598.37. Peor aún, desconocemos cómo el TPI calculó la suma presuntamente adeudada, ya que no emitió pronunciamiento alguno en cuanto al cómputo realizado. Resulta forzoso concluir que, el foro de instancia abusó de su discreción e incidió al denegar autorizar el retiro remanente adeudado, sin tomar en consideración los intereses y cargos que continuaron acumulándose.

### IV.

Por los fundamentos que proceden, se *expide* el auto de *certiorari* solicitado y se *revoca* la determinación recurrida. Se ordena al Tribunal de Primera Instancia, Sala Superior de Caguas, a autorizar el retiro de $40,598.37, correspondientes al remanente adeudado, más los intereses que dichos fondos hubieran generado, a favor de BPPR.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones. La jueza Álvarez Esnard disiente sin voto escrito.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones